**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

ASHLEY COX, EMILY DIMOND,
PENNY WILLIAMS, AMBER
DIMMERLING, and LENITA GIBSON,
on behalf of themselves and all others
similarly situated,

                        PLAINTIFFS,

v.                                               Civil No: **3:21-cv-00253-HEH**

ELLEN MARIE HESS,
in her official capacity as Commissioner
of the Virginia Employment Commission,

                        DEFENDANT.

## CLASS ACTION COMPLAINT

COME NOW, the Plaintiffs, Ashley Cox, Emily Dimond, Penny Williams, Amber Dimmerling, and Lenita Gibson ("Plaintiffs"), on behalf of themselves and all others similarly situated, by counsel, and as for their Complaint against Defendant, they allege as follows:

### I.      PRELIMINARY STATEMENT

1.      This is a class action brought to obtain declaratory and injunctive relief requiring the Commonwealth of Virginia to correct its gross failures to provide Virginians necessary unemployment benefits within the timing otherwise mandated by Federal and State law. Data collected by the U.S. Department of Labor show that Virginia ranks 53rd of 53 jurisdictions in

determining certain basic eligibility issues – with only 2% of cases decided in a timely manner.[1]

2.      Ellen Marie Hess is the Commissioner of the Virginia Employment Commission ("VEC" or "Defendant"), and this action is brought against her in that official capacity for violations of federal and state law, including: (1) violations of Plaintiffs' procedural due process rights under the Fourteenth Amendment to the U.S. Constitution; (2) violations of the Social Security Act and its regulations; and (3) violations of state law governing unemployment benefits.

3.      Unemployment benefits are intended to provide emergency cash assistance to workers who lose their jobs, to tide them over until they can find another job. Benefits are supposed to be available immediately: "as close to the nearest payday following termination" as possible. *Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. 121, 130 (1971). But for tens of thousands of Virginians, the unemployment benefits system has failed completely: either their claims for benefits have languished for months without any decisions made on their claims, or if they were lucky enough to begin receiving benefits, their benefits have been suddenly cut off without notice or explanation.

4.      Making matters worse, these unconscionable bureaucratic failures have not just blocked access to regular state unemployment benefits. Significant federal aid – including additional federal payments of up to $600 per week – has also been blocked, because those benefits are to be paid through the state unemployment system.

5.      VEC's failures harm the most vulnerable Virginians. And they have fallen disproportionately on Black Virginians. Recent census data shows that 19.9% percent of Virginia's population identify themselves as Black or African American.

---

[1] These data are described in paragraphs 32-36, *infra.* The survey includes all 50 states, plus the District of Columbia, Puerto Rico and the Virgin Islands.

https://www.census.gov/quickfacts/VA (last visited March 31, 2021). Yet by late June 2020, over 45% of Virginians applying for unemployment benefits were Black. https://www.vec.virginia.gov/sites/default/files/news-12018-VA%20Unemployment%20Claims%20Data-June%2027.pdf (last visited March 31, 2021).

6.      All of this is occurring in the context of massive Federal funding and mandates to address the ongoing COVID-19 economic crisis through expanded and extended unemployment benefits. The Commonwealth's refusal to construct a process to ensure that these benefits promptly get to those who need them denies Virginians the promise of these federal commitments.

7.      Plaintiffs are representatives of two proposed classes. Ashley Cox, Emily Dimond, and Penny Williams are representatives of the Delay Class: they applied for unemployment benefits in August, October, and November 2020, and as of the date of this Complaint, have neither received benefits nor been advised that their claims have been denied. Upon information and belief, there are thousands of others in a similar limbo status – denied access to the benefits they deserve and desperately need and denied a formal determination that would allow an appeal.

8.      Plaintiffs Amber Dimmerling and Lenita Gibson are representatives of the Continued Claims Class: they began receiving unemployment benefits in March and April 2020, but their benefits later stopped without explanation. There are thousands in a similar posture. Members of this group are likewise denied access to desperately needed benefits and denied a decision that would allow an appeal.

## II.      JURISDICTION AND VENUE

9.      The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and §§ 2201 and 2202 (declaratory judgment), because the action is brought under the federal Social Security Act, 42 U.S.C. § 503(a)(1), and under 42

U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

10.     The Court has personal jurisdiction over the Defendant because it is organized in Virginia, and the actions at issue occurred (or failed to occur) in Virginia.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred within this District, and the Defendant maintains its primary office in this District.

### III.     PARTIES

12.     Defendant Ellen Marie Hess is the Commissioner of VEC, the state agency responsible for administering the unemployment insurance program in Virginia, pursuant to the federal Social Security Act, 42 U.S.C. § 503 and the Virginia Unemployment Compensation Act, Va. Code Ann. §§ 60.2-100 *et seq.* She is sued in her official capacity. Commissioner Hess and VEC act under color of state law within the meaning of 42 U.S.C. § 1983.

13.     Plaintiff Ashley Cox is a resident of Wytheville, Virginia.

14.     Plaintiff Emily Dimond is a resident of Madison, Virginia.

15.     Plaintiff Penny Williams is a resident of Salem, Virginia.

16.     Plaintiff Amber Dimmerling is a resident of Fredericksburg, Virginia.

17.     Plaintiff Lenita Gibson is a resident of Portsmouth, Virginia.

### IV.     FACTS

***A.     Virginia's Unemployment Compensation System***

18.     Virginia's unemployment compensation system is part of a cooperative federal-state program established during the Great Depression. The purpose of the program (codified at Title III of the Social Security Act, 42 U.S.C. § 501 *et seq.*) is to provide cash assistance to workers as quickly as possible after they lose employment. *Java*, 402 U.S. at 130 ("The objective of

Congress was to provide a substitute for wages lost during a period of unemployment not the fault of the employee.").

19.     Speed in delivering benefits is a key feature of the unemployment compensation program. *Id.* at 130, 131–32 (the goal of Congress was to make benefits available "on the nearest payday following the [employee's] termination . . . to the extent that this was administratively feasible"). Accordingly, the Social Security Act requires state unemployment programs to maintain "methods of administration . . . reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). Following the direction of the Supreme Court in *Java*, the U.S. Secretary of Labor interpreted the "when due" requirement in the Social Security Act "to require that a State law include provision for such methods of administration as will reasonably insure the full payment of unemployment benefits to eligible claimants with *the greatest promptness that is administratively feasible*." 20 C.F.R. § 640.3 (emphasis supplied).

20.     In addition to regular state unemployment benefits, significant federal benefits are also paid through the state unemployment system, including: Pandemic Unemployment Assistance (which provides unemployment-type benefits to self-employed, independent contractors, and gig economy workers), Pandemic Unemployment Compensation (which aimed to provide $600 weekly supplements to unemployment insurance payments for payable benefit weeks before July 31, 2020), Lost Wages Assistance (which aimed to provide $300 weekly supplements, for several weeks in the fall of 2020, to payable benefit weeks where the claimant was eligible for $100 or more in underlying state benefits), and Pandemic Emergency Unemployment Compensation (which provides additional weeks of benefits, once someone's regular unemployment or PUA benefits are exhausted), and Extended Benefits (which aimed to provide additional weeks of

benefits once someone's PEUC benefits were exhausted, for much of 2020).

21.     Virginia's unemployment program is set out in the Virginia Unemployment Compensation Act, VA. CODE ANN. §§60.2-100 *et seq.* The Virginia Supreme Court ruled that this statute's purpose was to "provide funds for those temporarily unemployed [and is] . . . "remedial in character [and] . . . should be liberally construed so that those justly entitled to compensation may not be denied, and the purpose of the legislation thus effectuated." *Ford Motor Co. v. Unemployment Comp. Comm'n*, 63 S.E.2d 28, 33 (1951).

22.     The process of applying for unemployment benefits in Virginia involves two basic steps that are relevant here: (1) filing an initial application for benefits ("initial claim") and (2) filing a separate claim for each week of unemployment ("continued claim"). *See* https://www.vec.virginia.gov/unemployed/claims-information/our-claims-processes     (last visited March 31, 2021).

### *1.     Initial Claims*

23.     After an initial claim is filed, VEC takes two steps. First, it issues a "monetary determination," which involves checking data available through the Social Security Administration to determine if there are enough wages in covered employment during a defined prior period and, if so, the amount of unemployment compensation available to the claimant. *See*  https://www.vec.virginia.gov/unemployed/resources/your-unemployment-benefit-rights-and-responsibilities (last visited March 31, 2021). The amount of a claimant's benefit is normally based on the wages the claimant was paid during a defined prior period. *Id.*

24.     Second, the Commission normally sends a questionnaire to the claimant's last employer "requesting information regarding [the claimant's] employment and separation." *Id.* In Virginia, unemployment benefits are only available to employees who lose their jobs

because of no (or minimal) fault of their own. *Id.*; *see also* VA. CODE ANN. § 60.2-618(1), (2) (benefits not available to individuals who are "unemployed because [they] left work voluntarily without good cause" or were "discharged for misconduct connected with [their] work"); VA. CODE ANN. § 60.2-612(2) (no benefits for workers on strike).

25.     If information available to VEC indicates that the claimant may not be entitled to benefits, the claim is referred to a "representative designated by [VEC] as a deputy" to make a "non-monetary determination" (*i.e.*, a determination involving matters *other* than the amount of a benefit). VA. CODE ANN. § 60.2-619(A)(1). Nonmonetary determinations fall into two categories: "separation issues" which concern the circumstances surrounding the claimant's loss of employment and "nonseparation issues" which concern all other issues affecting the claimant's eligibility for unemployment benefits (other than those already addressed by the monetary determination).

26.     The VEC deputy's job is to "*promptly* examine the claim" and determine whether benefits are appropriate, *id.* (emphasis supplied), and then "*promptly*" inform the claimant of the decision, and "*promptly*" inform the former employer – so either party may appeal the deputy's determination. VA. CODE ANN. § 60.2-619(C) (emphasis supplied). In the meantime, if the deputy determines that benefits are appropriate, "[b]enefits shall be paid *promptly* in accordance with" the deputy's decision. VA. CODE ANN. § 60.2-619(E) (emphasis supplied).

27.     Guidance from United States Department of Labor ("DOL") states that non-monetary determinations must be made within approximately 21 days to be considered "timely" for the purposes of the Social Security Act. Unemployment Insurance Program Letter ("UIPL") No.          1145          Attachment          ¶          IV,          available          at

https://wdr.doleta.gov/directives/attach/UIPL/uipl_pre1975/uipl_1145a.cfm (last visited March 31, 2021) (Exhibit A).[2]

### 2.    Continued Claims

28.    In addition to the initial claim, a person seeking unemployment benefits in Virginia must also file a benefit request for each week of unemployment: "To receive a payment for benefits, [a claimant] must file a weekly request for each week" for which benefits are sought. https://www.vec.virginia.gov/unemployed/resources/your-unemployment-benefit-rights-and-responsibilities (last visited March 31, 2021). In the weekly benefit request the claimant verifies that they are able to work and available for work, and reports earnings from other employment. *See id.*

29.    Once VEC has begun to make a series of weekly benefit payments to a claimant (known as a "continued claim series"), a "presumption" of continued eligibility is created. UIPL 04-01 ¶ 7, available at https://wdr.doleta.gov/directives/attach/UIPL4-01.cfm (Exhibit B). Accordingly, "in the absence of facts clearly establishing current ineligibility, the [VEC] presumes the claimant's continued eligibility until it makes a determination otherwise." *Id.*

30.    Such a determination – which in Virginia would be issued by a VEC deputy, *see* VA. CODE ANN. § 60.2-619(A) – must be "timely." UIPL 04-01 ¶ 7 (Exhibit B ¶ 7); *see also* VA. CODE ANN. 60.2-619(A), (C) (deputy must act "promptly"). Determinations in a continued claims series must be made within approximately 14 days in order to be considered "timely." UIPL 04-01 ¶ 6 (Exhibit B at ¶ 6).

31.    As a result, if an issue with respect to a claimant's eligibility arises *after* the

---

[2] The precise calculation of timeliness depends on several factors. *See* UIPL No. 1145 Attachment ¶ IV (Exhibit A ¶ IV). Twenty-one days is the longest period in which a resolution could be considered "timely." *Id.*

claimant has begun to receive benefits, VEC may stop benefit payments briefly to allow a VEC deputy to review the issue. But the halt in benefits cannot be indefinite, because timeliness standards apply: a deputy must either issue a determination within approximately 14 days, or VEC must continue to pay the claimed benefits. *Id.* ¶ 7 ("when the date for a timely determination has passed in a continued claim series, the State must either issue a determination of ineligibility for U[nemployment] C[ompensation] (where the facts establish ineligibility) or else pay the UC immediately"). If a deputy issues a timely determination that a claimant is ineligible or disqualified, the claimant has a right to appeal. VA. CODE ANN. § 60.2-619(D).

### B.   *VEC Performance for Initial Claims*

32.     DOL tracks the performance of state unemployment agencies with respect to several "Core Measures." Core Measures are those that are considered to be critical indicators of the overall performance of the program. If acceptable levels of performance with respect to those core measures are not met, it signals fundamental impairment in program operations, and triggers corrective action planning. Unemployment Insurance, State Quality Service Plan, Planning and Reporting Guidelines, ETA Handbook 336, 18th Ed. (March 2019) at I-3, available at https://wdr.doleta.gov/directives/attach/ETAHandbook/ET_Handbook_No.336_18th_Edition_Change_4_acc.pdf (last visited March 31, 2021).

33.     One of those "Core Measures" is for "Non-Monetary Determination Time Lapse," which measures the percentage of "non-monetary" determinations made within 21 days. DOL established a performance standard for state unemployment systems that requires at least 80% of nonmonetary determinations be made within 21 days of the date the issue is detected. *Id.,* at Appendix I, p.2. DOL reports performance data on "Non-Monetary Determination Time Lapse" on its website, located at:

https://oui.doleta.gov/unemploy/performance1.asp. Reports can be generated for a specific state, as well as reports that rank all 50 states plus the District of Columbia, Puerto Rico and the Virgin Islands. The reports must be generated by the user using different web forms, depending on the report desired by the user.

34.     The most recent monthly data on Virginia is for the month ending February 28, 2021, according to the "Benefits: Timeliness and Quality Reports" generated at https://oui.doleta.gov/unemploy/performance1.asp. This report indicates that only 1.7% of non-monetary determinations made by VEC for "separation issues" (issues related to the job loss) were made within 21 days and only 2.9% of such non-monetary determinations were made within 70 days; meaning 97.1% of non-monetary determinations involving separation issues take more than 70 days. Exhibit C. For non-monetary determinations made by VEC for "nonseparation issues" (all other issues), 3.3% were made within 21 days and 5.5% were made within 70 days, meaning 94.5% of non-monetary determinations involving nonseparation issues take more than 70 days. Exhibit D.

35.     For the month ending January 31, 2021, the data were similar: only 1.7% of non-monetary determinations made by VEC for "separation issues" (issues related to the job loss) were made within 21 days and only 4.8% of such non-monetary determinations were made within 70 days. Exhibit E. For non-monetary determinations made by VEC for "nonseparation issues" (all other issues), 6.6% were made within 21 days and 11.1% were made within 70 days. Exhibit F.

36.     DOL also publishes quarterly time lapse data relating to non-monetary determinations for all 50 states plus the District of Columbia, Puerto Rico and the Virgin Islands. https://oui.doleta.gov/unemploy/ranking.asp. Using a web form, a report ranking 53

jurisdictions (50 states and 3 territories) may be generated by the user for discrete time periods. For the fourth calendar quarter of 2020, Virginia ranks last of all jurisdictions tracked – 53rd of 53 – with only 4.1% of non-monetary determinations issued within 21 days. Exhibit G. Virginia was ranked 52nd (of 53) for the second and third quarters of 2020 with 14.3% and 6.7% of determinations, respectively, issued in a timely manner. Exhibits H, I.

37.     News reports indicate that as many as 90,000 people have filed initial claims with VEC and are stuck in a limbo status: they have not received benefit payments, they have not received information about their benefit claims, and they have not even received a deputy determination denying benefits (which they could appeal). *See* Ned Oliver, "Virginia ranks worst in nation for quickly reviewing some unemployment claims," *Virginia Mercury*, Oct. 30, 2020, available at https://www.virginiamercury.com/2020/10/30/virginia-ranks-worst-in-nation-for-quickly-reviewing-unemployment-claims/ (last visited March 31, 2021); Colleen Curran, "'The communication . . . is broken': Almost a year later, out-of-work Virginians are still struggling to get answers or money from unemployment," *Richmond Times-Dispatch,* (Feb. 26, 2021), available at https://richmond.com/news/local/the-communication-is-broken-almost-a-year-later-out-of-work-virginians-are-still-struggling/article_2b388bd7-cbb6-5197-bb6f-08c734b34ab5.html (last visited March 31, 2021).

38.     In part, the delay in deputy determinations results from a conscious choice by VEC to hire additional staff for their "call center," and additional staff to help with initial claims processing, rather than deputies who can issue determinations. In October 2020, Megan Healy, Governor Ralph Northam's Chief Workforce Advisor, was quoted as follows: "And to be honest, we put our money in the call center staff and the processing staff, not adjudication officers." Oliver, *supra*.

39.     Notwithstanding the additional funding for call centers, many claimants spend hour after hour on VEC's website, or on "hold" with VEC's call center, desperately seeking information, and rarely receive anything helpful. *See* Curran, *supra.*

### 1.     *Plaintiff Ashley Cox*

40.     Plaintiff Cox lost her job with DBi Services, LLC on November 6, 2020.

41.     On July 14, 2020, Cox was severely burned by contact with a poisonous plant while working for DBi Services clearing the side of highway. DBi Services advised her on July 31 that she was terminated. However, after she applied for unemployment benefits on August 2, DBi Services changed her termination to a paid "leave of absence" under the Family and Medical Leave Act. She returned to work on October 22, after being cleared by her physician.

42.     On November 6th, 2020, DBi Services gave her the choice of resigning – in which case DBi Services would pay the medical bills related to the burn she received while working – or being fired. She chose to resign.

43.     Cox applied for unemployment benefits with VEC on November 8, 2020.

44.     VEC issued a "monetary determination" indicating that Cox was entitled to $378 per week for 26 weeks.

45.     Cox has never received unemployment benefits from VEC.

46.     In addition, Cox has not received a determination from VEC stating that she is not entitled to benefits. Accordingly, she has not had an opportunity to contest VEC's failure to pay benefits through the administrative process.

47.     Cox has continued to file weekly claims, even though she has not received benefits.

48.     Cox made several attempts to contact VEC to determine why she never received

benefits. She was informed that a VEC deputy would review her case soon, and was then told to stop calling to inquire as to the status of her claim.

49.     The absence of unemployment benefits has caused significant hardship for Cox and her family. Her sole source of income is $648.46 in monthly child support and $912 in monthly benefits under the Supplemental Nutrition Assistance Program ("SNAP"). She has exhausted her savings, overdrawn her checking account, and is selling personal possessions on eBay in order to remain current on electricity, water, and phone bills.

### 2.     *Plaintiff Emily Dimond*

50.     Plaintiff Dimond lost her job with CMG Women's Center on August 19, 2020. Dimond was told by her supervisor that her job was terminated due to poor performance, but she strongly disputes that characterization. She had worked at CMG Women's Center since 2018 as a Certified Medical Assistant.

51.     Dimond applied for unemployment benefits with VEC soon after her job was terminated.

52.     On or about August 26, 2020, she received a "monetary determination" from VEC indicating that she was entitled to $327 per week, plus federal supplemental benefits.

53.     Dimond never received unemployment benefits from VEC.

54.     In addition, Dimond has not received a determination from VEC stating that she is not entitled to benefits. Accordingly, she has not had an opportunity to contest VEC's failure to pay benefits through the administrative process.

55.     Dimond has continued to file weekly claims, even though she has not received benefits.

56.     Dimond made several attempts to contact VEC to understand why she never

received benefits. She has been unable to speak with anyone from VEC regarding her benefits.

57. The absence of unemployment benefits has been tremendously hard on Dimond and her partner. Their only income is her partner's monthly disability payment of roughly $1,700. She is four months behind on mortgage payments, six months behind on her electricity bill, and her driver's license was almost suspended because she could not afford automobile insurance. During this period she had a stroke, has been prescribed anti-depressants, and has been scheduled for heart surgery.

### 3.   *Plaintiff Penny Williams*

58. Plaintiff Williams lost her job with Blue Ridge Behavioral Healthcare on October 23, 2020. Williams learned of her termination when she returned to work after taking off for two days in accordance with the Family and Medical Leave Act. At that point she could no longer get access to her employer's computer system, and she was given a letter implying that she had voluntarily quit her job. That was not true; she had not quit – she had been terminated. She had worked at Blue Ridge Behavioral Healthcare in Accounts Payable since January 2018.

59. Williams applied for unemployment benefits with VEC on October 26, 2020.

60. Despite her application for benefits, Williams never received benefits from VEC, or a determination that she is not entitled to benefits, or even a monetary determination. Accordingly, she has not had any opportunity to contest VEC's failure to pay benefits through the administrative process.

61. Williams has continued to file weekly claims, even though she has not received benefits.

62. Williams made several attempts to contact VEC to understand why she never received benefits. She was informed that a VEC deputy would review her case soon, and was then

told to stop calling to inquire as to the status of her claim.

63.    The absence of unemployment benefits has been tremendously hard on Williams and her family.  Her sole source of income is $690 per month in child and spousal support, and she is now on Medicaid. She is four months behind on lease payments and subject to eviction. She is four months behind on her electricity bill. She has two broken vehicles that she cannot afford to repair, and because she lives in a rural area, she has to arrange for transportation to go anywhere. She has a health condition, asthma, which requires regular medication, and recently she could not afford to purchase her medication until she borrowed money from a friend. She needs to ration her money between necessities like food and medicine, and never has enough for both.

### C.    *VEC Performance for Continued Claims*

64.    In the fall of 2020, news reports indicated that VEC was also terminating benefit payments without explanation to individuals who had begun receiving payments. *See* Amber Hipolit, "Mom waits 16 weeks for unemployment benefits: 'It just feels like a losing war,'" WTVR 6 Richmond, Sept. 29, 2020, https://www.wtvr.com/news/problem-solvers/problem-solvers-investigations/mom-waits-16-weeks-for-unemployment-benefits-it-just-feels-like-a-losing-war (last visited March 31, 2021). A report in September indicated that nearly 60,000 people were in that limbo status: their benefit payments had stopped, but they had not received a deputy determination denying their benefit claims (which they could have appealed). *Id.* In early December 2020, VEC admitted that there were 80,000 people stuck in the "continued claims" limbo. Exhibit J (letter from William O Walton, Jr., Deputy Commissioner, VEC).

65.    Plaintiffs' Counsel brought the issue to the attention of the Virginia Attorney General and VEC in a letter dated November 6, 2020. Exhibit K. Specifically, Plaintiffs'

counsel advised VEC of the legal requirement to continue benefit payments that have been started unless a deputy determination is issued concluding that the recipient is ineligible. *Id.*

66.     In an internal memorandum dated December 9, 2020, VEC acknowledged the legal obligation to continue these benefit payments, and promised to do so:

> In order to comply with a precedent decision concerning the requirement to make prompt payments the agency will be taking steps to release separation issues holding up payments to individuals who are in a continued claim status (received at least 1 payment before the separation issue was discovered).

Exhibit L (memorandum to "All VEC Staff" from "Trish Williams, UI Director"). *See also* Exhibit J (resumption of payments "will allow payment of benefits [to be] consistent with 42 U.S.C. 303(a)(1), SSA" [*sic* – should be 42 U.S.C. § 503(a)(1)]).

67.     The following month, VEC again acknowledged the legal obligation to continue benefit payments ("[i]n order to comply with a precedent decision") and claimed that it was at least in the process of doing so ("the agency has taken steps"). Exhibit M (memorandum to "All VEC Staff" from Williams).

68.     Nevertheless, in response to a records request pursuant to the Virginia Freedom of Information Act, VEC conceded that, as of January 13, 2021, there were still 7,453 individuals in this "continued claim" status "who have not yet received resumed payments." Exhibit N. VEC later acknowledged that this number may understate the actual scope of the problem, because some claims may have been lost in their system, and because it was not counting claims in which issues had been identified prior to June 25, 2020.

69.     Moreover, in a communication to Plaintiffs' counsel on April 8, 2021, UI Director Trish Williams – the same VEC official who authored the December memorandum acknowledging the legal obligation to continue benefits – described three cases in which VEC continued to violate that obligation even after her December 2020 memorandum was issued.

At a meeting with Plaintiffs' counsel in February 2021, VEC officials acknowledged the obligation to continue claim payments, and advised Plaintiffs' counsel to submit names of individuals whose claims were stopped without notice to a specific email box. Plaintiffs' counsel submitted three names on February 17 to test the system. VEC responded on April 8. VEC's response shows (1) in all three cases claims were illegally stopped without a deputy determination, (2) benefits were illegally stopped for at least six months in each case, and (3) Ms. Williams's December 2020 memorandum had no apparent effect, because benefits were not restarted until a subsequent deputy determination. Exhibit O.

### 1.  *Plaintiff Amber Dimmerling*

70.     Plaintiff Dimmerling was laid off from her 35-hour-per-week job at a restaurant in Tysons Corner in March 2020.  Although the restaurant remained open, as the pandemic hit Virginia, the restaurant went to using a skeleton crew. She was told that there wasn't any work for her.

71.     Dimmerling applied for unemployment benefits with VEC in March 2020. Initially she received benefit payments, and in some weeks the payments included additional federal benefits.

72.     At about the same time that Dimmerling was laid off, her daughter's school shut down to in-person instruction. She is a single parent, and her daughter has special needs. Before her layoff, she had only worked when her daughter was physically in school.

73.     Dimmerling could no longer afford housing after her layoff, so she was forced to move (with her daughter) to her mother's home in Fredericksburg.

74.     After she moved, her former employer contacted her occasionally to ask her to cover a shift at the restaurant. On one occasion her employer asked if she could come back to

work on a very limited schedule. Those were not workable options. Working on a limited basis at the restaurant in Tyson's Corner would have required travel from Fredericksburg and paying for a sitter for her daughter.

75.     Dimmerling's benefits stopped in September 2020. She has not received any benefits since. In addition, Dimmerling has not received any statement from VEC describing why her benefit payments stopped. Accordingly, she has not had an opportunity to challenge VEC's failure to continue her benefits through the administrative process.

76.     At about the same time, Dimmerling received a monetary determination from VEC stating that she was eligible for Pandemic Unemployment Assistance, which is one form of supplemental federal assistance. She was asked to supply earnings information to VEC, and she did.

77.     Dimmerling continued to file weekly claims, even though she has not received benefits since September 2020.

78.     Dimmerling made many attempts to contact VEC since September 2020, but she has never been able to get an explanation as to why her benefits stopped.

79.     In early January 2021, Dimmerling received a letter from the VEC that stated: "There is an issue(s) associated with your claim that may affect your eligibility for unemployment insurance… [T]he VEC will not prevent you from claiming and receiving UI benefits while the issue on your claim is evaluated."

80.     Despite the letter, Dimmerling has not received benefits from VEC since September 2020.

81.     The loss of benefits, without notice and without a chance to challenge the decision, have been tremendously hard on Dimmerling and her daughter. She lost her home, had

to leave the area and move in with family. The circumstances have been overwhelming.

## 2.    *Plaintiff Lenita Gibson*

82.    Plaintiff Lenita Gibson lost her job at BAE shipyard in February 2020.

83.    Gibson was told that she was being laid off because business was slow. She has worked in shipyards for roughly 20 years.

84.    Gibson applied for unemployment benefits with VEC soon after her job was terminated.

85.    After applying for benefits, Gibson received a written notice from VEC stating that she was eligible for $76 per week in unemployment benefits, plus federal supplemental benefits. The notice stated she could receive benefits for a total of 24 weeks.

86.    Gibson received weekly benefit payments from VEC for approximately three weeks. After that point her benefits stopped, and she has not received any benefit payments since. In addition, she has not received any statement from VEC describing why her benefit payments stopped. Accordingly, she has not had an opportunity to challenge VEC's failure to continue her benefits through the administrative process.

87.    At one point Gibson received a letter from VEC asking for information regarding her job separation. She filled out the form and took it back to the post office and mailed it soon after she received it.

88.    Gibson has continued to file weekly claims, even though she has not received benefits.

89.    Having never received notice or explanation as to why her benefits stopped, Gibson made many attempts to contact VEC. She could not get through on the phone. When she called and was able to get connected into the phone system (which happened only sometimes), she would

have to stay on "hold" for a long time, and then would get dropped by the call system without reaching anyone. She also tried to go to the Norfolk VEC office to speak with someone, but the office was closed. She finally was able to speak with a VEC representative on or around late September 2020. The representative did not give her much information, other than to confirm that they received the job separation form that she had mailed back. The representative also told her that she would not get any more benefit payments until her case was reviewed by a VEC deputy.

90.     Gibson received a form letter from VEC dated December 10, 2020, which stated that VEC was wrong to cut off her benefits, and that payments would resume while she waited for her case to be reviewed by a deputy. Nevertheless, Gibson has not received benefits.

91.     The loss of benefits has been tremendously hard on Gibson. She managed to find a job at a seasonal swimming pool, from late July through late September 2020, but no other employment. Her landlord decided not to renew her lease in late 2020, and she became homeless for roughly four months in late 2020 and early 2021. (She currently has housing, but only as a result of temporary assistance through rent relief programs.) She has relied on food stamps and food banks to have something to eat, and she has no income other than food stamps.

## V.     CLASS ACTION ALLEGATIONS

92.     This case is brought as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), on behalf of the following classes:

(1)     "Delay Class." All individuals who have: (a) filed an initial claim for unemployment benefits[3] with VEC after February 1, 2020; (b) filed at least one

---

[3] "Unemployment benefits" includes regular unemployment compensation payable under the Virginia Unemployment Compensation Act, VA. CODE ANN. § 60.2-100 *et seq.*, as well as all extended benefits and any additional and special forms of benefits – including federal benefits – payable through the state unemployment compensation system, such as Pandemic Unemployment Assistance (which provides unemployment-type benefits to self-employed, independent contractors, and gig economy workers), Pandemic Unemployment Compensation (which aimed to provide $600 weekly supplements to unemployment insurance payments for payable benefit weeks

additional weekly claim for benefits, for which there are payable benefits; (c) neither received benefit payments, nor an appealable decision from a VEC deputy denying their benefit claim, for more than 21 days after their claim has been filed.

Plaintiffs Cox, Dimond and Williams are members of the Delay Class.

(2)     "Continued Claims Class." All individuals who: (a) have received one or more unemployment benefit payments from VEC since February 1, 2020; (b) have filed at least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either: (i) an appealable decision from a VEC deputy denying their claims, or (ii) all benefit payments he or she would be entitled to receive if shown to be eligible and qualified.

Plaintiffs Dimmerling and Gibson are members of the Continued Claims Class.

93.     *Numerosity*:  The proposed classes are sufficiently numerous as to render joinder impractical. Upon information and belief, the Delay Class includes thousands – perhaps tens of thousands – of individuals. Based on reports from VEC, the Continued Claims Class recently included approximately 7,500 individuals – and probably more. Each Class's members are geographically disbursed throughout the Commonwealth of Virginia. These individuals are known through Defendant's records, and can be provided mail notice of this action with addresses taken from Defendant's records.

94.     *Commonality*: Common questions of law and fact affect all members of each class, including, by example only and without limitation:

(a)     for the Delay Class, whether VEC's failure to determine the validity of

unemployment benefit claims within 21 days of detecting a non-monetary issue,

---

before July 31, 2020), Lost Wages Assistance (which aimed to provide $300 weekly supplements, for several weeks in the fall of 2020, to payable benefit weeks where the claimant was eligible for $100 or more in underlying state benefits), Pandemic Emergency Unemployment Compensation (which provides additional weeks of benefits, once someone's regular unemployment or Pandemic Unemployment Assistance benefits are exhausted), and Extended Benefits (which aimed to provide additional weeks of benefits once someone's PEUC benefits were exhausted, for much of 2020).

violates (i) the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (ii) the Virginia Unemployment Compensation Act, VA. CODE ANN. § 60.2-619, and/or (iii) the Social Security Act, 42 U.S.C. § 503(a)(1).

(b) for the Continued Claims Class, whether VEC practice of halting benefit payments without providing an appealable decision within 14 days, violates (i) the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (ii) the Virginia Unemployment Compensation Act, VA. CODE ANN. § 60.2-619, and/or (iii) the Social Security Act, 42 U.S.C. § 503(a)(1).

95. *Typicality:* The claims of Plaintiffs Cox, Dimond and Williams are typical of the claims of the Delay Class in that they have (a) submitted initial claims for unemployment benefits between August and November 2020; (b) filed at least one additional weekly claim for benefits, for which there are payable benefits; (c) neither received benefit payments, nor an appealable decision from a VEC deputy denying their benefit claim, for more than 21 days after their claim has been filed. Indeed, they have not received *any* response to their initial claims from VEC whatsoever, notwithstanding significant efforts on their parts to seek information, and they are in a limbo status in which they have neither benefits nor an appealable denial of benefits.

96. The claims of Plaintiffs Dimmerling and Gibson are typical of the claims of the Continued Claims Class in that they (a) have received one or more unemployment benefit payments from VEC since February 1, 2020; (b) have filed at least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either: (i) an appealable decision from a VEC deputy denying their claims, or (ii) all benefit payments he or she would be entitled to receive if shown to be eligible and qualified.

97.     *Adequacy:* The named plaintiffs will fairly and adequate protect the interests of the proposed classes. Plaintiffs' claims are identical to the claims of the class members, they have no relevant conflicts of interest with other members of the proposed classes, and they have retained competent counsel experienced in class actions, unemployment compensation and constitutional law.

98.     This action may be maintained under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by different class members against VEC would create the risk of incompatible standards of conduct for VEC with respect to members of each class.

99.     This action may also be maintained under Federal Rule of Civil Procedure 23(b)(2) because VEC has acted (or, more appropriately here, failed to act) in ways that apply generally to members of each class, so that final injunctive relief and corresponding declaratory relief is appropriate with respect to each class as a whole.

100.    Management of this action as a class action will not present any likely difficulties.

101.    In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

102.    In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### Denial of Due Process – 42 U.S.C. § 1983

103.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint as if set forth herein.

104.    Plaintiffs Cox, Dimond, and Williams, and members of the Delay Class assert a claim pursuant to 42 U.S.C. § 1983 for violations of their procedural due process rights under the

Fourteenth Amendment to the U.S. Constitution.

105.    Plaintiffs Cox, Dimond, and Williams, and the members of the Delay Class have a legitimate expectation of entitlement to, and, thus, a protected property interest in, having their initial claims for unemployment benefits promptly examined and determined by a VEC deputy – resulting either in prompt payment of unemployment benefits, or a prompt, appealable determination that they are not entitled to benefits, pursuant to VA. CODE ANN. § 60.2-619.

106.    VEC's failure to promptly examine claims caused the deprivation of applicants' entitlement to have their claims promptly examined. Section 1983 liability for constitutional deprivations by state actors includes the failure to act when there is a clear duty to do so.

107.    VEC has no procedures to ensure claimants can get their initial claims for unemployment benefits promptly examined by a VEC deputy as required by VA. CODE ANN. § 60.2-619. By causing the vast majority of claimants to wait months before their claims are examined by a deputy, VEC has effectively extinguished claimants' property interest in having their claims promptly examined by a deputy. Consequently, plaintiffs Cox, Dimond, and Williams, and the members of the Delay Class, are stuck in a procedural limbo, where they are not receiving prompt decisions on their claims and have no way to challenge VEC's failure to promptly determine their eligibility and qualification for those benefits.

108.    Plaintiffs Dimmerling and Gibson and members of the Continued Claims Class assert a claim pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.

109.     Plaintiffs Dimmerling and Gibson and the members of the Continued Claims Class have a protected property interest in their continued receipt of unemployment benefits.

110.   Under the Social Security Act, 42 U.S.C. § 503(a)(1), and its implementing regulations, there is a "presumption" that Plaintiffs Dimmerling and Gibson and members of the Continued Claims Class are eligible to receive continued benefits unless they receive an appealable determination that they are no longer entitled to benefits. UIPL 04-01 ¶ 7 (Exhibit B ¶ 7). Neither Plaintiffs Dimmerling and Gibson – nor, by definition, the members of the Continued Claims Class – has received an appealable determination that they are no longer entitled to benefits.

111.   VEC's decisions to stop benefit payments to Plaintiffs Dimmerling and Gibson and the members of the Continued Claims Class plainly constitute affirmative "state actions." And even if the events were to be characterized as "inaction" – failure to issue a timely determination of ineligibility, rather than affirmatively acting to stop benefit payments – that, too, constitutes "state action" for the purposes of Section 1983.

112.   The procedures employed by VEC are transparently inadequate because they ceased payments without issuing timely, appealable determinations. Accordingly, Plaintiffs Dimmerling and Gibson, and the members of the Continued Claims Class, are denied benefits they are entitled to receive, and are stuck in a procedural limbo where they cannot challenge VEC's failures. This is not a close question of whether a certain decision-making procedure adequately protects the Plaintiffs' rights; this is a situation in which, for their purposes, there is no procedure at all.

### COUNT II
### *Failure to Provide Prompt Payments – 42 U.S.C. § 503(a)(1)*

113.   Plaintiffs allege and incorporate by reference each allegation contained in this Complaint as if set forth herein.

114.   Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504, and 20 C.F.R. § 640.3(a) require that state unemployment compensation laws provide for such methods of

administration as will reasonably ensure the full payment of unemployment benefits to eligible claimants when due and with the greatest promptness that is administratively feasible.

115.    Plaintiffs Cox, Dimond, and Williams, and the Delay Class members they represent, have all filed claims for unemployment benefits with VEC, and have neither received benefits, nor an appealable determination that they are not eligible and/or qualified for benefits. They exist in a limbo status in which they are entirely powerless to claim the benefits to which they are entitled – wholly at odds with the statutory mandate to make prompt payment of benefits. Accordingly, in its actions and failures to act with respect to Plaintiffs Cox, Dimond, and Williams and members of the Delay Class, VEC has violated, and continues to violate, the "when due" provision of the Social Security Act, 42 U.S.C. § 503(a)(1), and 20 C.F.R. § 640.3(a), actionable pursuant to 42 U.S.C. § 1983.

116.    Under the Social Security Act, 42 U.S.C. § 503(a)(1), a "presumption" of continued eligibility is created after a state agency such as VEC has begun to make a series of weekly benefit payments to a claimant. UIPL 04-01 ¶ 7 (Exhibit B ¶ 7). Accordingly, "in the absence of facts clearly establishing current ineligibility, the State agency presumes the claimant's continued eligibility until it makes a determination otherwise." *Id.*

117.    Such a determination – which in Virginia would be issued by a VEC deputy, *see* VA. CODE ANN. § 60.2-619(A) – must be "timely." UIPL 04-01 ¶ 7 (Exhibit B ¶ 7); *see also* VA. CODE ANN. 60.2-619(A), (C) (deputy must act "promptly"). And as to continued claims, determinations must be made within 14 days in order to be considered "timely." UIPL 04-01 ¶ 7 (Exhibit B ¶ 5).

118.    As a result, if a question with respect to a claimant's eligibility arises *after* the claimant has begun to receive benefits, a VEC deputy must either issue a determination that the

claimant is ineligible within 14 days, or VEC must pay the claimed benefits while that question waits for deputy evaluation. *Id.* ¶ 7 ("when the date for a timely determination has passed in a continued claim series, the State must either issue a determination of ineligibility for U[nemployment]C[ompensation] (where the facts establish ineligibility) or else pay the UC immediately"). If a deputy issues a timely determination that a claimant is ineligible, the claimant has a right to appeal. VA. CODE ANN. § 60.2-619(D).

119.    Plaintiffs Dimmerling and Gibson, and the members of the Continued Claims Class, (a) have received one or more unemployment benefit payments from VEC; (b) have filed at least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either: (i) an appealable decision from a VEC deputy denying their claims, or (ii) all benefit payments he or she would be entitled to receive if shown to be eligible and qualified.

120.    VEC's actions in halting (and failing to promptly restart) benefit payments to Plaintiffs Dimmerling and Gibson and the members of the Continued Claims Class violate the Social Security Act, 42 U.S.C. § 503(a)(1), and its implementing regulations.

### COUNT III
### Failures to Meet Statutory Obligations – Virginia Code § 60.2-619

121.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint as if set forth herein.

122.    Plaintiffs Cox, Dimond, and Williams, and the members of the Delay Class have, under Virginia law, a statutory right to have their initial claims for unemployment benefits promptly examined and determined by a VEC deputy. That examination should result either in prompt payment of unemployment benefits, or a prompt, appealable determination that the applicants are not entitled to benefits, pursuant to VA. CODE ANN. § 60.2-619.

123.    Plaintiffs Cox, Dimond, and Williams, and the Delay Class members they represent, have all filed claims for unemployment benefits with VEC, and have not had their claims promptly examined by a VEC deputy, in violation of VA. CODE ANN. § 60.2-619.

124.    VEC lacks procedures to ensure claimants can get their initial claims for unemployment benefits promptly examined by a VEC deputy as required by VA. CODE ANN. § 60.2-619. By causing the vast majority of claimants to wait months before their claims are examined by a deputy, if at all, VEC has effectively extinguished claimants' statutory rights. Consequently, Plaintiffs Cox, Dimond, and Williams, and the members of the Delay Class, are stuck in a procedural limbo, where they are not receiving prompt decisions on their claims and, in turn, have no way to challenge VEC's failure to promptly determine their eligibility and qualification for those benefits.

125.    The Virginia Unemployment Compensation Act, VA. CODE ANN. § 60.2-619 establishes a "presumption" of continued eligibility after VEC has begun to make a series of weekly benefit payments to a claimant, and requires VEC to continue benefits payments, while a question waits for deputy evaluation, unless a deputy makes a timely determination that benefits are not appropriate.

126.    As a result, if a question with respect to a claimant's eligibility arises after the claimant has begun to receive benefits, a VEC deputy must either issue a timely determination that the claimant is ineligible, or VEC must pay the claimed benefits. If a deputy issues a timely determination that a claimant is ineligible, the claimant has a right to appeal. VA. CODE ANN. § 60.2-619(D).

127.    Plaintiffs Dimmerling and Gibson, and the members of the Continued Claims Class, (a) have received one or more unemployment benefit payments from VEC; (b) have filed at

least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either: (i) an appealable decision from a VEC deputy denying their claims, or (ii) all benefit payments he or she would be entitled to receive if shown to be eligible and qualified.

128.    VEC's actions in halting (and failing to promptly restart) benefit payments to Plaintiffs Dimmerling and Gibson and the members of the Continued Claims Class violates the Virginia Unemployment Compensation Act, VA. CODE ANN. § 60.2-619.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Cox, Dimond, and Williams, on behalf of themselves and the class they represent, and Plaintiffs Dimmerling and Gibson, on behalf of themselves and the class they represent, demand judgment on behalf of themselves and the putative class members for declaratory and injunctive relief as pled, including the adjudication and payment of unemployment benefits, a prohibition against further violations of law and for such declaratory and injunctive relief as may be appropriate; for attorneys' fees and costs; and for such other relief the Court does determine just and appropriate.

**The Plaintiffs demand a trial by jury.**

Respectfully submitted,
Ashley Cox, Emily Dimond,
Penny Williams, Melissa
Dimmerling and Lenita Gibson,
on behalf of themselves and all others
similarly situated.

By:    _____/s/_____
Craig C. Marchiando, VSB # 89736
Leonard A. Bennett, VSB # 37523
Amy Austin, VSB # 46579
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A

Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: amyaustin@clalegal.com

Steven Fischbach, VSB # 94280
**VIRGINIA POVERTY LAW CENTER**
919 East Main Street, Suite 610
Richmond, VA 23219
Telephone: (804) 351-5266
Email: steve@vplc.org

Brenda Castaneda, VSB # 72809
Patrick Levy-Lavelle, VSB # 71190
Granville Warner, VSB # 24957
**LEGAL AID JUSTICE CENTER**
1000 Preston Avenue
Charlottesville, Virginia 22903
Telephone: (434) 977-0553
Email: brenda@justice4all.org
Email: pat@justice4all.org
Email: cwarner@justice4all.org

Daniel Turczan, VSB # 81551
*Admission to EDVA Pending*
**LEGAL AID WORKS**
500 Lafayette Blvd., Suite 100
Fredericksburg, Virginia 22401
Telephone: (540) 371-1105
Email: dturczan@legalaidworks.org

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
**KELLY GUZZO, PLC**
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email:  kkelly@kellyguzzo.com
Email:  aguzzo@kellyguzzo.com
Email:  casey@kellyguzzo.com