# Exhibit A

Attachment to UIPL No. 1145

PROCEDURES FOR IMPLEMENTING
THE JAVA DECISION REQUIREMENTS

Manpower Administration
Unemployment Insurance Service

Procedures for Implementing the Java Decision's Requirements

I. Introduction

The material contained in this statement discusses the procedural implications of the Java decision by the U.S. Supreme Court. The Court's opinion in this case was primarily an explanation of the reasons for its decision rather than an explanation of the procedures to be followed in applying the decision and its opinion. The reasoning of the Court in support of its decision is, however, broader in scope than the factual situation in the specific case it was considering. Other cases now pending in the Federal Courts may reach the Supreme Court and elicit from it more specific guidance as to the procedures required in the adjudication of unemployment benefit cases.

Pending such further guidance by the Supreme Court, procedures implementing the Java decision must nonetheless be adopted even though it is recognized that changes may later be necessary and that experience may show that certain of the procedural choices are more and others less effective in meeting the requirements stated by the Court and attaining the statutory objectives which the Court described.

Unemployment Insurance Program Letter No. 1126 states the Manpower Administration's view that to meet the interpretation of section 303(a)(1) of the Social Security Act, given by the Court in its Java opinion, "a State's law and procedure must provide for:

1. Paying benefits promptly, after a determination has been made in the claimant's favor, regardless of the pendency of the appeal period or of any appeal that has been taken from the determination; and

2. Providing reasonable notice to both the claimant and employer of the time and place of the pre-determination factfinding hearing."

Promptness of Determination and Payment

In considering procedural steps to implement the requirements stated by the Court, the fullest weight must be given to the emphasis the Court repeatedly placed on the Congressional objective of achieving the promptest payment of benefits that is administratively possible.

"The objective of Congress was to provide a substitute for wages lost during a period of unemployment not the fault of the employee. Probably no program could be devised to make insurance payments available precisely on the nearest payday following the termination, but to the extent that this was

administratively feasible this must be regarded as what Congress was trying to accomplish. The circumstances surrounding the enactment of the statute confirm this."

(After citing the 1935 recommendations of the Committee on Economic Security and its staff's estimates of possible amounts and duration of unemployment benefits, the Court continued.) "Other evidence in the legislative history of the Act and the commentary upon it supports the conclusion that 'when due' was intended to mean at the earliest stage of unemployment that such payments were administratively feasible after giving both the worker and the employer an opportunity to be heard. The purpose of the Act was to give prompt if only partial replacement of wages to the unemployed, to enable workers to tide themselves over, until they get back to their old work or find other employment, without having to resort to relief.'"

"Our reading of the statute imposes no hardship on either the State or the employer and gives effect to the congressional objective of getting money into the pocket of the unemployed worker at the earliest point that is administratively feasible. That is what the Unemployment Insurance program was all about."

The Court's stress on speeding benefit payments to unemployed workers suggests that this factor appropriately is the key criterion to be used in choosing among alternative procedures for implementing the requirements stated in the decision. This objective of prompt payment seems clearly, in the Court's view, to suffuse the entire unemployment insurance program. The Court said: "We conclude that the word 'due' in § 303(a)(1), when construed in light of the purposes of the Act, means the time when payments are first administratively allowed as a result of a hearing of which both patties have notice and are permitted to present their respective positions; any other construction would fail to meet the objective of early substitute compensation during unemployment."

Requirement of Benefit Payment During Pendency of Appeals

Although the Court's decision dealt specifically only with the initial determination of a worker's eligibility made at the time of the worker's initiation of a claim series, the reasoning of the Court would lead to the conclusion that when redeterminations or appeal decisions allow benefits such benefits must be paid promptly without delay or suspension because of the pendency of an appeal or an appeal period. It would follow also that determinations and decisions that disqualify workers for benefits for lesser periods than the State statute would permit or for the maximum disqualification period do not justify withholding benefits for weeks following the benefit denial.period specified in the disqualifying determination or decision. If the individual is able to work and available for work and otherwise meets requirements for entitlement for such weeks, he should be paid benefits for such weeks.

The Court did not pass on the effect of a subsequent redetermination or appeal decision reversing the initial determination awarding benefits or modifying it adversely to the claimant. Nor did it deal with the adequacy of a subsequent determination, based on a later and different issue, to deny benefits to the claimant. In the case of an appeal decision that reverses or modifies adversely a determination that allowed benefits, it seems clear that such a decision stops the payment of benefits. The Court recognized that appeal decisions involve de novo considerations and, of course, the parties to an appeal are given an opportunity for a fair hearing. As to redeterminations relating to the same issue and determinations relating to new and later issues, even though it is recognized that both categories are in issue before the Federal courts, it seems reasonable to assume that the same predetermination process that is sufficient to establish that benefits are "due" is'sufficient to establish that they are not "due." The procedural discussion in this document proceeds on this assumption. [1]

Requirement of Notice and Opportunity to be Heard

Most of the procedural discussion contained in this document deals with the predetermination hearing to which the Court referred in its conclusion (i.e., "a hearing of which both parties have notice and are permitted to present their respective positions"). These particular procedures are not required for conformity with the Court's interpretation of section 303(a)(1). They are recommended as reasonable approaches which meet the requirements of the statute with due regard to the promptness of benefit

payments that the Court has stressed. But they are not the only such approaches. The Court left to the States the choice of procedures to be used in predetermination factfinding proceedings, so long as the procedures provide to the parties reasonable notice and opportunity to be heard and result in the prompt payment of benefits.

The words "hearing" and "be heard" as used by the Court in the Java opinion are susceptible of more than one interpretation. That the Court did not use "hearing" to require a "due process" hearing, "fair" hearing or an "evidentiary" hearing would seem clearly to follow from its careful avoidance of the holding in Goldberg v. Kelly (397 U.S. 254), which the Java appellees had urged the Court to follow. In Goldberg v. Kelly the Court's majority had said that although "statutory 'fair hearing'" was not required (p. 266), welfare payments to a recipient who had initially been held eligible could not be suspended without a pretermination evidentiary hearing (p. 264). Instead, in Java the Court said specifically that.:

> "Although the eligibility interview is informal and does not contemplate taking evidence in the traditional judicial sense, it has adversary characteristics and the minimum obligation of an employer is to inform the interviewer and the claimant of any disqualifying factors. So informed, the interviewer can direct the initial inquiry to identifying a frivolous or dilatory contention by either party."

Thus, although a State agency may choose, and in some cases most appropriately, to provide a conventional type of hearing such as an "evidentiary," "due process" or "fair" hearing before making a determination of an unemployment benefit issue case, 2 it cannot be said that this is the Court's requirement.

The following points as to the character of the predetermination factfinding proceeding emerge from the Court's opinion.

1. The Court equated "interview" and "hearing" (It (the preliminary interview) ... is an occasion when the claims of both the employer and the employee can be heard ...) (402 U.S. 121, at p. 134)

2. The Court's recitation of the details of the California determination procedure early in its decision (402 U.S. 121, at pp. 126-127) notes carefully that, when the claim is filed, "the employer is asked to furnish, within 10 days, 'any facts then known which may affect the claimant's eligibility for benefits'." Subsequently the Court noted, if the employer challenged eligibility, the interviewer is required "to seek from any source the facts required to make a prompt and proper determination of eligibility." "This," said the Court, "clearly contemplates inquiry to the latest employer, among others." The Court then describes the claimant as appearing for his interview and being asked to answer questions, explain inconsistencies and offer his version of the facts. "The interviewer is instructed to make telephone contact with other parties, including the latest employer, at the time of the interview, if possible ... Interested persons, including the employer, are allowed to confirm, contradict, explain, or present any relevant evidence."

3. The Court pointed out that a proceeding conducted "informally" which does not "contemplate taking evidence in the traditional judicial sense," meets the traditional "hearing" requirement. (402 U.S. 121, at p.134)

4. The purpose of the proceeding is to inquire into the claim and to obtain information that supports or opposes the claim.

5. The employer's contribution to the proceeding is to furnish information. His "minimum obligation ... is to inform the interviewer and the claimant of any disqualifying factors." The employer who "has notice of the time and place of the preliminary interview" has a "responsibility to present sufficient data to make clear his objections to the claim for benefits and put the interviewer in position to broaden the inquiry if necessary." The employer "who fails to present any evidence ... has in effect defaulted ..." (402 U.S. 121, at 134)

6. The inquiry is to be controlled by the interviewer. The information elicited from the employer and the claimant becomes the basis for any necessary further inquiry to develop additional information that is required to make a determination. (402.U.S., 121, at p. 134)

Taking these enumerated aspects of the Court's use of the word "hearing" into accounts at least two views can reasonably be taken of the Court's meaning and intent that are different from the conventional type of hearing.

For purposes of convenience one of these may be labeled the "separate interview" approach and the other the "investigatory proceeding" approach. (As will presently appear, these are labels and not precise descriptions.)

Separate Interview

This approach says in effect, that the Court's reference to furnishing an employer an opportunity to be heard means giving the employer a reasonable opportunity to present his information and factual contentions about the claim in an effective manner. To provide such an opportunity: (1) the employer must be asked to supply a written statement of potentially disqualifying information and he may be called on the telephone to give more details when further statements from the claimant at the interview or before indicate that such a telephone inquiry is appropriate or necessary and; (2) in addition, the employer must be advised in any case involving a determination issue that he may also, if he wishes, appear in person or through a representative at the local office and supply such further information with respect to the claim as he may have to present. To meet this latter requirement States may request employers at the time they respond to the request for separation information to indicate whether they wish to appear at the local office to present information on the claim. Employers who reply affirmatively indicating a desire to appear would be notified of the date and place of the claimant interview and advised that they should call the local office to arrange for their own appearance and interview in sufficient time so that the information they then present may be used in the interview with the claimant. When the employer appears, a claims examiner will interview him concerning the claim and obtain from him such additional information as he has to offer.

As is apparent, this view of the Court's use of the word "hearing" rests on a conclusion that the Court did not refer to a proceeding in which both parties must be given an opportunity to appear at the same time and place to present their information in each other's presence. Instead, the Court used the term broadly to encompass a factfinding process which would assure that each party was permitted to present his version of the facts in writing and by personal appearance, be apprised of the substance of the other's position and then be given a further opportunity to respond when a response would be material to the determination.

Investigatory Proceeding

This approach takes a different view of the Court's use of the word "hearing": The "hearing" is to be a proceeding that is held at a specific time and place, at which the parties are given an opportunity to appear, in each other's presence, and to present their information on the issue to the examiner directly and in person. Consistent with this view, the notice of the time and place of the proceeding serves the purpose of advising the parties when and where they should be present if they are to attend.

The proceeding differs from the conventional hearing in some significant respects. The Court indicated that the proceeding is conducted in the form of an interview to obtain information, clarify or verify questionable statements, and seek explanations of inconsistent facts. It is conducted by an examiner whose responsibllity it is to obtain all of the facts required for a prompt and proper determination of the claimant's right to benefits, and who may not act merely as an umpire or judge of conflicting contentions of opposing parties: Accordingly, he asks the questions of the parties and not they of each other (or, through their representatives, of themselves). It is informal and does not follow traditional modes of taking evidence. Information obtained outside the proceeding (written statements by the employer, telephone

calls, etc.) may be given full consideration. In these circumstances, oaths, a verbatim record, subpoenas and cross-examination are not required and are not recommended.

States should also be mindful of our continued recommendation, expressed in UIPL 1126 that all State laws should authorize the State agency to transfer cases involving difficult issues of fact or law and multiple claimants to the appeal tribunal or the board of review for determination, following a full and fair hearing. (See UIPL No. 1136 for suggested legislative language for such authorizing statutory provisions.)

II. Current Claims Taking and Interviewing Procedures Affected by the Java Decision

In many States methods have been devised for identifying claims which require special handling for factfinding and nonmonetary determination, while permitting routine non-issue cases to be processed rapidly and economically.

Typically, this has involved brief questioning of claimants at the initial claims contact to obtain the reason for separation. When an issue has been raised by the claimant's statement, arrangements have been made for a subsequent factfinding interview at which the issue is inquired into. This has afforded time to make the monetary determination and obtain employer information. It has also limited extensive interviewing to cases where claimants continue to file claims. The postponement of the interview has eliminated interview and determination time for claimants who return to work or are monetarily ineligible.

Typically, the separating employer has been notified of the claim filed and the claimant's stated reason for separation. Employers have been asked to respond if they have any reason for questioning eligibility. The intent has been to have this response on hand when the previously scheduled time for the claimant's appearance arrives, thus permitting an interviewer [3] to conduct a factfinding interview based upon the employer's statement, as well as the claimant's. This kind of procedure has afforded the claimant an opportunity to rebut information furnished by the employer prior to the final determination. Interviewers have been expected to seek additional information needed for a proper determination if the employer statement is inadequate or he fails to respond.

The essential elements of this process will continue to be necessary under the following procedures. In addition, it will be necessary to afford an interested employer notice and opportunity to be heard in issue cases.

III. Factfinding Proceeding Required in Issue Cases Only

Essentially, opportunity for an interested employer to be heard is required only when there is an issue as to benefit entitlement. Questions involving chargeability only would not be governed by the requirements of the Court's decision. When the claimant has indicated that he was separated for lack of work, and the employer does not dispute this statement, no change in existing procedure is required. When the information given by a claimant upon filing his claim, taken together with the separation information furnished by the employer, can result only in ineligibility or disqualification, there is no necessity to afford the employer an opportunity to appear. When issues do not involve any employer who is an interested party, the predetermination factfinding proceeding presumably would differ little from present factfinding interviews.

Interested Parties

State law will determine who are interested parties in addition to the claimant. Only employers who are interested parties must be afforded an opportunity to appear in predetermination proceedings. In most States, when an initial claim is filed, only the separating employer is an interested party. In some States, however, all base-period employers as well (as the separating employer) are interested parties. Whether (and which) employers are interested parties in connection with issues arising during a claim series also depends upon provisions of State law.

IV. Promptness of the Determination Process

Determinations on issues arising in connection with new claims may be considered on time within the meaning of the Court's requirement for promptness if accomplished no later than the second week after the week in which the claim is effective.

The proposed time limit provides for completion of the determination process on normal claims (nonretroactive) by the end of the week in which the claimant would be certifying to his first compensable week regardless of the type of "week" used by the State.

These are examples of how this time limit for promptness would work out with a claim filed on August 12 (Thursday) in three different types of State "week":

| Type of State "week" | Effective Date of Claim | Time Limit for Determination |
|---|---|---|
| 1. Calendar week (claims predated to preceding Sunday) | August 8 (Sunday) | August 27 (last working day of the second week after week which the claim was effective) |
| 2. Calendar week (claim post-dated to following Sunday) | August 15 (Sunday) | September 3 (last working day of second week after week for which the claim was effective |
| 3. Flexible week (claim effective on date of filing) | August 12 (Thursday) | September 1 (last working day of second (flexible) week after week for which the claim was effective) |

Prompt mailing of notices is critical to prompt completion of the process. Mailing times involved will often make it difficult or perhaps impossible to achieve the promptness contemplated when notices to employers are prepared and mailed centrally. For this reason the procedures proposed here envision mailing of such notices from local offices. An employer's failure to respond on time to notices should not be permitted to delay proceedings.

V. Scheduling and Notification Process

An opportunity to appear requires that the parties be informed of the time, place and nature of the proceeding so that the parties can know and protect their rights.

   A. Notification of Parties (See subsection B as to mass separations.)

   The procedures for providing notice to claimants and employers include new elements designed to inform the parties of their opportunity to appear.

      1. Notice to Employer

         a. Notice of Claim Filed and Request for Separation Information

         Informing employers of their right to appear should be tied in with the current practices, in most State agencies, of mailing notices of claims filed. [4]

         The notice of claim filed should contain the following information:

            (1) The claimant's stated reason for separation;

            (2) That the employer must post his return of the notice within 5 calendar days of its mailing by the agency with any information he has concerning the

circumstances of separation or any reason he has to question the claimant's eligibility; [5]

(3) The consequence under State law of his failure to respond to the notice;

(4) That the claim will be determined on the basis of available information in the absence of a reply from him;

(5) That in cases where issues [6] are raised by the information obtained from him or the claimant he may attend a predetermination factfinding proceeding;

(6) That he is not required to attend such a proceeding and, if he chooses to rely on written information rather than appear in person, it will be given full consideration in the making of the determination;

(7) That he should reply as to whether or not he wishes to attend such a proceeding in the cases and that if he replies that he wishes to attend, he will be notified of the time and place; and

(8) That benefits will be paid immediately if allowed, even though an appeal is taken.

b. <u>Notice to Employer of Proceeding</u>

There are at least two methods for notifying the employer of the actual place and time of the proceeding. One method is to schedule the proceeding automatically after discovery of an issue, and to provide information concerning the time and place of the proceeding in the notice mailed to the employer. The proceeding would most likely be set for the time that the claimant is scheduled to report to the local office. [7] This method would have the advantage of providing earlier advice to the employer, thus giving him a better opportunity to decide whether he can, or wishes to, attend the proceeding. A major disadvantage would be that such a procedure would require an advance allocation of space and claims examiners' time for such proceeding before it is known whether the employer will appear.

The second method, which appears to be preferable, is to schedule the proceeding after an employer has indicated on his response to the notice of claim filed that he intends to appear. Better estimates can then be made of the time required for a particular proceeding and the time required, in the aggregate, for <u>all</u> proceedings scheduled on a particular day. It also makes possible more flexibility in scheduling predetermination proceedings for cases in which the employer elected not to appear. The disadvantage of this procedure is that it requires two contacts with employers who indicate a desire to appear -- the notice of claim filed and the notice of time and place of the proceeding.

When an employer has signified his intention to appear at the proceeding, a notice of the time and place should be mailed to him at least <u>three calendar days</u> before the scheduled date of the proceeding. [8] If, for example, the proceeding is to be held on Tuesday, the notice should be mailed no later than the preceding Friday. The next three calendar days, the days of notice, would be Saturday, Sunday, and Monday. (Note that the mailing date has not been counted and the date of the proceeding is the day following the specified number of calendar days of notice.)

When circumstances require that such notification be given by telephone (as is likely to be the case in separate interview proceedings), an appropriate record should be made of

    the exact information given the employer, the name of the person to whom the information was given, and the date and hour of the telephone call.

  c. <u>Content of Notice to Employer of Proceeding</u>

    If the employer who has requested an opportunity to appear is to be given an effective opportunity, he must be given certain basic information concerning the proceeding.

    This should include, at least:

      (1) The time, place and purpose of the proceeding; and

      (2) His right of representation and that any person designated to appear at the proceeding to present information on the employer's behalf should either have direct knowledge of the circumstances surrounding the issue or be able to present the written statement of a person who has such knowledge and/or the employer's pertinent, written records.

2. <u>Notice to Claimant of Proceeding</u>

Claimant must be informed of the predetermination proceeding but the method employed for notification will vary according to whether advance notice is required and whether other interested parties are involved in the determination.

When no other interested parties are involved, in most instances it will be possible to hold the proceeding immediately and no written notice will be required. The claimant should be informed of the purpose and nature of the proceeding.

If the proceeding is scheduled for a later date, the notice to the claimant should be in writing. This may be given by entry on the claimant's reporting booklet or on a separate notification form. The following information should be provided in the notice: [9]

  a. The time, place and purpose of the proceeding;

  b. Advice that the employer might attend; [10]

  c. The need for particular evidence (doctor's statement, etc.) and the claimant's right to bring witnesses;

  d. His right of representation; and

  e. That he notify the local office if he cannot attend the proceeding at the scheduled time and the reasons so that the office may reschedule the proceeding or take whatever other action is appropriate.

3. <u>Time and Place of Proceeding</u>

The time and place of the proceeding must neither burden the claimant nor delay payment of benefits to which the claimant may be found entitled. It is recommended that the proceeding be scheduled for the day and hour on which the claimant is scheduled to report at the local office. [11] By so scheduling the proceeding, the local office procedures for equalizing workloads by spreading claimant reporting periods throughout the days of the week would better be maintained.

4. <u>Requests for Postponement or Continuance</u>

Since requests for postponement or continuance of a proceeding may, if granted, delay the payment of benefits that may be due, they should not be granted except in compelling circumstances. Such a request by an employer, however, can often be satisfied by asking him to appear separately from the claimant or inviting him to submit his information in writing or by telephone.

Since the claimant is the initiating party who seeks prompt payment of benefits and is moreover required as a condition of getting benefits to report when requested by the agency, his presence at the proceeding is generally assured. On the infrequent occasions when he requests a postponement it should be granted where information from him is necessary to make the determination and it would be difficult to obtain from him in writing.

### B. Notice Requirements in Mass Separations

In the case of mass lay-offs where employers furnish lists of laid-off workers to the agency there is no need for notice to the employer and opportunity to be heard in person because lack of work is the cause of separation.

In mass cases involving issues, such as labor disputes, special procedures may be necessary, and as recommended in UIPL Nos. 1126 and 1136, consideration should be given to referral of the claims to the appeal tribunal or board of review for the initial determination.

## VI. Requirements for Notice When Issues Arise After the Initial Determination

In general, the preceding section applies also to issues that arise during a claim series or to an additional claim. Insofar as such issues involve special consideration, however, they are discussed in this section.

The Java case did not involve an issue arising after the initial determination. The reasoning of the Court, however, requires that interested employers be given notice and opportunity to be heard with respect to such issues.

### A. Issues Arising During a Clam Series

When an issue arises during a claim series and the claimant is the only interested party, no substantive changes from existing procedures are required. A typical situation would involve a claimant who, during his regular interview, reports an illness during the week being claimed that might warrant denial of benefits for the week. All necessary actions can be taken on the spot, and the claimant may be informed of the issues and of his right to hearing. Factfinding can then take place, and a determination can be made.

When an issue arising during the claim series involves any interested party in addition to the claimant, notice and an opportunity to be heard must be given to such other party. The determination of the issues may not be made until such notice and opportunity has been provided. Such determinations will be considered on time within the meaning of the Court's requirement for promptness if issued no later than the end of the week following the week in which the issue arises.

### B. Additional Claims

C. An additional claim begins a new claim series and involves a new reason for unemployment. Unlike a claim that may begin a benefit year, however, such a claim does not require a monetary determination.

It follows that payment of benefits cannot commence until a determination of entitlement is made after notice to the pprties and opportunity to be heard. When an issue arises in connection with an additional claim, and notice must be afforded to parties other than the claimant a proceeding must

be scheduled for a date after the filing of the claim. As in the case of new claims, employers should be given notice of the claim and five calendar days in which to respond and to state whether they wish to appear in person. Employers who wish to attend should be afforded at least three calendar days' advance notice of time and place of the proceeding. If the employer elects to appear, a determination issued in the second week after the additional claim is effective will be considered on time within the meaning of the Court's requirement for promptness. In other cases it should be possible to issue the determination by the end of the week after the additional claim is effective.

VII. Conduct of the Predetermination Proceedings

    A. Investigatory Proceedings

Although the appearance of an employer or his representative adds a new element, it need not materially change the content of the factfinding interview from that conducted by interviewers prior to the Java decision. While each State must determine how its proceedings will be conducted, it is our recommendation that: the proceeding should not be recorded, the parties should not be required to testify under oath, and the subpoena procedure should not be used. Each party, however, may have witnesses appear in his behalf, and where necessary the party or the witness may avail himself of the services of an interpreter whom either he or the agency may provide.

The interviewer should tactfully but firmly control the proceedings. Each party should be given an opportunity to present his view of the facts, and should be given rebuttal opportunity. The interviewer may and should ask questions to elicit from the parties and their witnesses information he deems relevant to the issues in the case at hand. He should have the parties' questions and answers directed to him rather than permit questions, discussion or argument between the parties.

In some instances a party may wish to record the proceeding. While the agency cannot prohibit such recordings, the practice should be discouraged, as it may disrupt the conduct of the proceeding. Both parties must be informed in such cases that the agency record will be the only official record to be used in making the determination or in any subsequent appeals.

        1. Preparation of Factfinding Report

State practice in the preparation of factfinding reports may be used at a predetermination factfinding proceeding. The common practice of taking notes which can be used in preparing factfinding reports will suffice. Since the factfinding report, essentially, is a report of the interviewer, it is not necessary that the individual parties sign the report. However, some State agencies may wish to have parties sign certain statements which appear to be vital to the proceedings, and this may be done.

        2. Separate Appearances of Claimant and Employer

The investigatory type of predetermination proceeding is intended to afford the employer an opportunity to appear at the factfinding interview at the same time as the claimant. Provision for employer appearance should not be made for any place other than the local office where the claimant is filing and the proceeding is scheduled. If an employer requests an opportunity to make his appearance elsewhere, he should be asked to submit his information in writing instead, since only the claim-filing office has records and knowledge of the case.

If an employer wishes to appear at the claim-filing office before the scheduled time for the proceeding, he should be permitted to do so if at all possible, but he should be informed that the claimants appearance will not be rescheduled to conform to his. (This in, effect changes the proceeding to the separate interview type explained in VII.B below.)

In responding to a request by an employer for separate appearance, he should also be informed again that information may be submitted in writing and it will be given full consideration in the making of the determination.

### 3. Representation of Parties

Each party has the right to be represented by a person of his choice, but this right has been seldom exercised at the determination level. In view of the <u>Java</u> decision, representation at the factfinding proceeding may increase. The handling of the representative adds a new dimension to the interviewer's task. The interviewer should ascertain at the outset the status of the representative and he should inform him that his participation will be limited to the presentation of information necessary to decide the issues, and as to which he has direct knowledge or is able to present the written statement of a person who has such knowledge and/or the employer's pertinent written records.

## B. Separate Interview

This type of proceeding consists essentially of providing for a personal interview on the determination issues with an employer who has requested it in addition to the predetermination factfinding interview with the claimant. Accordingly, the considerations that make recordings, oaths, and subpoenas inappropriate in the investigatory proceedings apply with equal or greater force in the separate-interview proceeding. No change from pre-<u>Java</u> practices would appear necessary in the claimant-interview portion of the proceeding.

The employer-interview part of the proceeding would differ from any other factfinding interview conducted by the interviewer only in the need for the interviewer to take into account the fact that the interview takes place as the result of the employer's request and that it usually supplements written information already provided by the employer. Presumably, the employer in such an interview has additional information and the interviewer should permit him to present that additional information before any questions designed to get other information are directed to the employer. The employer may wish to raise questions that he believes should be put to the claimant. These should be accepted when they are pertinent to claimant's benefit eligibility and the employer should be assured that they will be taken up in the claimant interview.

Subparagraphs A. 1 and 3 Would appear to be generally applicable also to separate interviews.

## C. Referral of Cases to the Appeals Authority

Certain types of cases are not suited to the predetermination proceeding contemplated for the great majority of determination issues. These are cases involving difficult questions of fact or law and multiple claimants. It is recommended that State agencies use their authority to transfer such cases to appeal tribunals or boards of review for determination. If a State agency now lacks legislative authority for transferring such cases to an appeals body, it should seek such authority. [12] As in other types of predetermination proceedings, promptness is crucial.

## D. Notice of Determination

Present State practices with respect to the preparation and distribution of Notices of Determination are not affected by the changes in procedures required to insure that both claimant and employer(s) are given reasonable notice and opportunity to be heard. Any needed adaptations would present no problem so long as they do not interfere with the prompt completion of the determination process. In any event, the claimant is entitled to a written Notice of Determination as provided in section 6013, Standard for Claim Determinations-Separation Information, Part V of the ES Manual.

VIII. Payment of Benefits During Investigation, Determination, Redetermination and Appeals (Including Higher Authority) [13]

    A. Under the Java decision benefits allowed in an initial determination may not be withheld by reason of the pendency of the appeal period or of an appeal.

    B. In addition, the reasoning of the Court in the Java decision supports the payment of benefits as indicated below. [14]

        1. Redeterminations

Since practices vary so widely among the States, the following covers only the most common kinds of redeterminations: (a) When a claimant was initially found ineligible and another interested party is involved, notice and opportunity to be heard in a predetermination proceeding must be offered both parties before a redetermination can be made. No benefits may be paid until the redetermination is completed and then benefits are to be paid immediately or denied, according to the redetermination. (b) When a claimant was initially found eligible, notice and opportunity to be heard must be afforded to the claimant and any other interested party before a redetermination can be made that could modify or reverse that initial determination. In the meantime benefits may not be withheld. Benefits will be paid or denied upon the issuance of. the redetermination and in accordance therewith.

        2. Appeals

Except as it may be precluded by a "double affirmance" provision in the State law, an appeal decision should be given immediate effect when it is issued and benefits should be paid or denied in accordance with it regardless of the issue involved or previous determinations and decisions and regardless of the fact that a further appeal may be taken.

        3. Payment of Benefits for Weeks Not in Dispute

In the case of an appeal, it has been the practice to pay benefits only for weeks "not in dispute." For example, in a voluntary--quit case where State law provides a variable 1-to-6 week disqualification, and a 3-week disqualification has been assessed, benefits would be withheld for 6 weeks, because the appeal decision could result in increasing the disqualification. The reasoning of the Court in the Java case leads to the conclusion that benefits after the 3 week disqualification initially imposed are due and are to be paid if the claimant is eligible for such later weeks.

        4. Suspension of Benefit Payments During a Claim Series

In the Case of any week claimed during a claim series as to which a question arises, such as a question of work refusal, a determination must be made as to whether benefits are payable. Before such a determination, benefits will not be withheld. When the determination has been made following appropriate predetermination procedures, benefits must then be paid or denied in accordance with that determination. When the question relates to eligibility or possible fraud for past weeks only, benefits claimed for current weeks may not be suspended while an investigation is conducted. They may be denied in appropriate cases, however, for weeks claimed after a determination or redetermination has been made of the issue(s) with respect to such prior weeks, following notice to the interested parties and opportunity to be heard. In order to minimize overpayments this process should be completed as quickly as possible.

IX. Interstate Claims, Federal Claims and Monetary Determination Issues

A. Interstate Claims

Although the procedural concepts outlined in this document have been stated in terms of intrastate claims, they apply as well to interstate claims. The interested employer in a determination issue arising in an interstate claim must be given an opportunity not only to submit information concerning the claim in written form but also, if he wishes, to appear either in person or by representative and submit any additional information he has to offer that bears upon the issue. Since it is not necessary that an employer who wishes to make such an appearance be interviewed in the claimant's presence, his opportunity to appear and be interviewed on the claim may be provided to him in the office of the liable State where the determination will be made rather than in the agent-State local office where the claimant is to be interviewed. Obviously, such an interview on an interstate claim with an employer who is located in the liable State and wishes to make an appearance would need to be held at a time when any information he may present can be taken into account in making the determination. If the interested employer is located in the agent State, the latter will have the responsibility to notify the employer of the opportunity to appear at the local office, and if he elects to make an appearance, to schedule it at an appropriate time.

B. Application of Java Decision to Federal Unemployment Insurance, Training Allowances and Related Payments

The requirements for paying benefits promptly after a determination has been made in the claimant's favor, regardless of the pendency of the appeal period or of any appeal that has been taken from the determination, are applicable to Federal claims. The requirement of notice to an interested employer and opoprtunity to be heard will, however, have no effect on those programs which do not involve employers as interested parties.

Following are specifics on application of the requirement for notice and opportunity to be heard relating to the various kinds of Federal claims.

UCFE: (Unemployment Compensation for Federal Employees)

When a private employer is an interested party to a UCFE claim, the procedures for notice and opportunity to be heard with respect to State UI claims are applicable.

When a Federal agency is an interested party to a UCFE claim, the Java decision does not change present methods of processing so long as findings of the Federal agency, in writing, which are final and conclusive, are applicable in determining the claim.

UCX: (Unemployment Compensation for Ex-Servicemen)

When a private employer is an interested party to a UCX claim the procedures for notice and opportunity to be heard with respect to State UI claims are applicable.

When a Federal agency which employed the claimant as a civilian employee is an interested party, the procedures applicable to UCFE claims apply. For the purpose of the Java procedure, a branch of the Armed Forces for which a UCX claimant served on active military duty is never considered to be an interested party with respect to reasons for separation or for not reenlisting or for not continuing on active duty, since the State agency does not apply the eligibility or disqualification provisions of the State unemployment insurance law to any of these. Thus in such cases the notice-and-opportunity-to-be-heard requirement of the Java decision is not applicable.

TRA: (Trade Readjustment Allowances)

The procedures for implementing the Java decision for State UI claims, with respect to notice and opportunity to be heard, are applicable to TRA claims with respect to employers who are interested

parties to an issue.

Training Allowances, Disaster Unemployment Assistance and Other Similar Federal Payments

The procedures implementing the Java decision, with respect to notice and opportunity to be heard, have no effect on factfinding procedures for determination of issues arising under the Manpower Development and Training Act (MDTA), the Work Incentive Program (WIN ), or the Disaster Unemployment Assistance provisions of the Disaster Relief Act of 1970. There is no employer or other interested party involved in such cases. Established procedures for the factfinding claimant interview and notice of determination satisfy the requirements for predetermination proceedings.

C. Monetary Determinations

It should not be assumed that, because the facts in the Java case presented a nonmonetary determination issue, the Court's requirements do not also apply to monetary determinations and redeterminations. The principles are equally applicable when monetary determinations or redetermirations involve issues of fact although the manner in which they must be applied necessarily is affected by the nature of the issues and the processes required to resolve them. Some monetary "issues," for example, are simply questions of computation or other operational matters that relate entirely to the processing of data already contained in the agency's records. To settle such questions the State agency need not seek information from either the employer or the claimant and there is, no occasion for appearance by either at an interview.

Some monetary issues, however, present questions which cannot be resolved from a review of the agency's records. For example, a claimant may question the correctness of an employer's wage report underlying the agency record on which the claimant's monetary determination was based. Yet another claimant may contend that his monetary determination has not taken into account wages he earned during his base period that an employer omitted from his report because, in his view, there was no employment relationship. Common agency practice in such cases is to make a field investigation including a visit to the employer's place of business, a review of his records and an interview with the employer or the appropriate members of his staff who have the necessary pertinent information. The facts thus obtained, together with the information submitted by the claimant, are then used in resolving the issue and as the basis for the necessary monetary redetermination. When this is the case, the process used has itself provided an appearance by the employer in the factfinding proceeding in addition to his written submittal. There would ordinarily appear to be no need to provide the employer in such cases with yet a further opportunity to appear in the factfinding proceeding that precedes the monetary determination or redetermination in question. The common agency practice of reinterviewing the claimant after the results of the field investigation are available assures claimant of his opportunity to appear and be heard before the determination is made.

---

1. See also UIPL No. 1136, July 19, 1971 "Draft language to Implement the Java Decision," Explanatory Statement, Attachment No. 1, p. 2.

2. This would be most appropriate, for example, in cases involving difficult issues of fact or law and multiple claimants. See UIPL No. 1126 and UIPL No. 1136.

3. Anyone, whatever his title, who interviews parties and others to obtain the facts necessary for making a determination.

4. A State agency which requires employers to submit separation notices to the agency automatically upon the separation of a worker will also need to use notices of claim filed or other appropriate notice to the employer of his right to appear and be heard.

5. If the fifth day is a Saturday, Sunday, or holiday, then the period runs to the next day which is not a Saturday, Sunday, or holiday. The five-day requirement is suggested to State agencies as appropriate to meet the promptness limit provided in section IV. States may wish to vary the requirement for areas where mail delivery problems require it.

6. An explanation to employers of what is an "issue" in the case of a benefit claim appropriately is included in an employer handbook or other general informational material that is given to all registered employers. If such an explanation has not been supplied to all employers, it should accompany the notice of claim filed.

7. Not applicable if the State uses separate interview type of proceeding.

8. Where experience demonstrates that more time is needed to provide reasonable notice, this period may be modified.

9. The detail that needs to be included in the individualized portions of such notices to claimants can be reduced by attaching an adequate printed explanation to each notice or by including appropriate explanatory detail in claimant handbooks or pamphlets.

10. Not applicable if the State uses separate interview type of proceeding.

11. Not applicable if the State uses separate interview type of proceeding.

12. Appropriate legislative language for this purpose was transmitted to State agencies with UIPL No. 1136, July 19, 1971.

13. Some increase in overpayments will result from the new requirements for immediate payment of benefits. If State law requires recovery, claimants should, of course, be informed that benefits being paid under such circumstances may (according to requirements of State law) be subject to recovery or future offset as the case may be. This information may be included in general informational material furnished to all claimants. In any event, it should not be presented in such a manner as to discourage claimants from accepting the benefits due them.

14. For additional discussion see Explanatory Statement, Attachment No. 1 to UIPL No. 1136, July 19, 1971.