# Exhibit B

| | CLASSIFICATION |
|---|---|
| **U.S. DEPARTMENT OF LABOR**<br>**Employment and Training Administration**<br>Washington, D. C. 20210 | UI |
| | **CORRESPONDENCE SYMBOL**<br>TEUL |
| | **ISSUE DATE**<br>October 27, 2000 |
| **RESCISSIONS**<br>None | **EXPIRATION DATE**<br>Continuing |

**DIRECTIVE** : **UNEMPLOYMENT INSURANCE PROGRAM LETTER NO. 04-01**

**TO**     : **ALL STATE EMPLOYMENT SECURITY AGENCIES**

**FROM**    : **GRACE A. KILBANE**
            **Administrator**
            **Office of Workforce Security**

**SUBJECT** : **Payment of Compensation and Timeliness of Determinations during a Continued Claims Series**

1. **Purpose.** To remind States of the Department of Labor's (Department's) interpretation of the "payment when due" requirement of Section 303(a)(1) of the Social Security Act (SSA), as applied during a continued claim series, and to provide clarification concerning this interpretation.

2. **References.** Section 303(a)(1), SSA; California Department of Human Resources Development v. Java, 402 U.S. 121 (1971); Fusari v. Steinberg, 419 U.S. 379 (1975); Pennington v. Didrickson, 22 F.3d 1376 (7th Cir. 1994); 20 CFR Parts 602 and 640; Unemployment Insurance Program Letter (UIPL) No. 1145 (Procedures for Implementation of the Java Decision); UIPL No. 34-85 (Voluntary Waiver of Benefit Rights by a Claimant Pending the Outcome of an Employer Initiated Appeal); ETA Handbook No. 365 (Unemployment Insurance Quality Appraisal (no longer in effect)); ET Handbook No. 301 (UI Performs: Benefit Timeliness and Quality (BTQ): Nonmonetary Determinations Quality Review); ET Handbook No. 401 (Unemployment Insurance Reports).

3. **Background.** While conducting training for States on the new process for reviewing the quality of nonmonetary determinations, the Department became aware that, during a continued claim series, some States may not properly administer the requirements of Section 303(a)(1), SSA, concerning payment of unemployment compensation (UC) "when due." The Department has three specific concerns.

First, some States may fail to pay benefits to claimants for weeks in which no eligibility issue exists when a determination of eligibility for a previous week is pending.

Second, the Department has observed an inconsistency among States in the starting date used to calculate timeliness of determinations during a continued claim series, a date that should be uniformly applied.

Third, the Department has found that, during a continued laim series, some States improperly withhold benefits from laimants when the State does not make a determination of continued eligibility in a timely fashion.

The Department is issuing this UIPL in order to address these concerns. It clarifies UIPL No. 1145, issued in 1971 but still in effect, with respect to the date to be used for calculating timeliness of determinations during a continued claim series, and clarifies when payment may not be withheld during a continued claim series.

4. **Section 303(a)(1), SSA -- "Full Payment .... When Due."** Section 303(a)(1), SSA, requires States, as a condition of receiving Federal UC administration grants, to provide in their laws for "[s]uch methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due." In the 1971 decision, California Department of Human Resources Development v. Java, the Supreme Court interpreted "when due" in Section 303(a)(1), SSA, to mean "at the earliest stage of unemployment that such payments [are] administratively feasible after giving both the worker and the employer an opportunity to be heard." Although the specific holding in Java required the State to pay benefits to claimants initially determined eligible pending an employer appeal, the Court's reasoning was broader, requiring promptness at all stages of the eligibility determination and payment processes. See UIPL No. 1145, Attachment, page 1; Fusari v. Steinberg, 419 U.S. 379, 387-388 n.15 (1975); and Pennington v. Didrickson, 22 F.3d 1376, 1386 (7th Cir. 1994) (quoting Jenkins v. Bowling, 691 F.2d 1225 (7th Cir. 1982)). The Department has issued regulations interpreting the promptness requirement of Section 303(a)(1), SSA, to require payment of UC to eligible claimants, and the making of determinations, "with the greatest promptness that is administratively feasible." 20 CFR 640.3(a). In addition, in the attachment to UIPL No. 1145, the Department interpreted the promptness requirement of Section 303(a)(1), SSA, to require prompt determinations on individual claims. See pages 8 & 14, UIPL No. 1145, Attachment.

As well as promptness, the Department has always interpreted "when due" in Section 303(a)(1), SSA, to require accuracy in order to ensure that payments are not made when they are not due. See 20 CFR 602.11(a) and 602.21(c). Proper application of Section 303(a)(1) requires an appropriate balancing of the dual concerns of promptness and accuracy in the "when due" provision.

5. **The Need for Payment Without Delay to Claimants in Weeks for which They Are Eligible During a Continued Claim Series.** As stated, a fundamental aspect of payment "when due," for purposes of Section 303(a)(1), SSA, is that UC is due to claimants who are eligible under State law. Eligibility for UC is determined on a week-by-week basis. During a continued claim series, a claimant must certify as to continuing eligibility for each week. If information provided by the claimant or others establishes eligibility, the State agency manifests its determination of eligibility for that week by issuing compensation to the claimant. When a question concerning continued eligibility for benefits for a given week arises, the State agency conducts an investigation of the facts and makes a determination of eligibility or ineligibility. While such a determination is pending, the State agency need not issue payment for the week in question until it issues a determination regarding eligibility, *provided* the determination is timely. Sometimes the question of eligibility affects future weeks. In such circumstances, not issuing payment for these later weeks because of the earlier eligibility issue is acceptable until a *timely* determination is made.

When the question of eligibility does not affect later weeks, however, States must make payment for the later weeks without delay. In other words, States may not withhold payment for later weeks in which no eligibility issue exists consistent with Section 303(a)(1), SSA's requirement to pay benefits "when due." The Department clearly expressed this requirement on page 19 of the Attachment to UIPL No. 1145, stating "[w]hen the question [of eligibility] relates to eligibility or possible fraud for past weeks only, benefits claimed for current weeks *may not be suspended* while an investigation is conducted [emphasis added]." This requirement is still in force.

6. **Timely Determinations in a Continued Claim Series.** The attachment to UIPL No. 1145 interpreted the "when due" provision in Section 303(a)(1), SSA, and Java, to require prompt resolution of eligibility issues that arise during a continued claim series. That Attachment stated that such determinations would be considered to be issued "on time" within the meaning of the "when due" requirement, as interpreted in Java, if issued "no later than the end of the week following the week in which [an] issue *arises* [emphasis added]." Thus, the date on which an issue "arises" is the critical date for calculating timeliness.

The term "arises" has historically been subject to different interpretations. Some States have interpreted the "arises" date literally to mean the date a claimant engaged in potentially disqualifying behavior. Other States have applied the interpretation found in ET Handbook No. 365, Quality Appraisal, in effect from 1992-1996, which says that determinations during a continued claim series are timely if "issued within 7 days from the end of the week in which the issue is *detected*" (in the case of intrastate claims) or the

State *"received notification"* of the issue (in the case of interstate claims) (emphases added). This approach interpreted the "issue arises" date in UIPL No. 1145 to mean the issue detection date. This interpretation is followed in subsequent handbooks, including ET Handbook No. 401, the UI Reports Handbook, and Handbook 301, the BTQ NonMonetary Determination Quality Review Handbook (see pages V-9 and V-10). Handbook 401 defines the issue detection date as: "the earliest date that the agency, including organizational units . . . , is in possession of information indicating the existence of a nonmonetary issue" (see page V-3-5).

Although UIPL No. 1145, Attachment, used the term "arises," taken in context, that term means, as reflected in later handbooks, the date an issue is detected by the State agency. Interpreting the "issue arises" date in the more literal manner followed by some States (meaning the date of the potentially disqualifying event) would necessarily preclude timely determinations in many cases. For example, if a claimant refused a job in week one and has until Thursday or Friday of the following week to submit a claim certification for week one, it may be impossible for the agency to gather facts and issue a decision by Friday of week two. Requiring a determination to be made in that manner is not reasonable, nor is it necessary under Section 303(a)(1), SSA. Consequently, States are to use the issue detection date as the date from which to calculate timeliness for purposes of Federal requirements.

7. **Balancing Timeliness and Accuracy: the Presumption of Continued Eligibility.** Although Section 303(a)(1), SSA, requires timely determinations regarding eligibility for individual claimants, States may, in some cases, be unable to issue a determination in a timely fashion. UIPL No. 1145 stated that before a determination is made in a continued claim series "benefits *will not be withheld*" (emphasis added) (see UIPL No. 1145, Attachment, page 19). Over the years, the Department has been asked about the meaning of this statement, especially in relation to the requirement of Section 303(a)(1), SSA, that payment not be made when it is not due.

With this UIPL, the Department clarifies this statement in UIPL No. 1145, Attachment, concerning payment during a continued claim series. Prior to the date for timely determinations, a State is not required to pay UC without a determination. However, when the date for a timely determination has passed in a continued claim series, the State must either issue a determination of ineligibility for UC (where the facts establish ineligibility) or else pay UC immediately. Payment would occur under a presumption of continuing eligibility. The presumption means that the State has made an initial determination of eligibility and, based on that initial determination and the absence of facts clearly establishing current ineligibility, the State agency presumes the claimant's continued eligibility until it makes a determination otherwise. The presumption is appropriate in a continued claim series because a determination of initial eligibility exists on which the presumption can be based. The presumption may not be applied on an initial claim.[1] The presumption appropriately balances the timeliness and accuracy concerns of Section 303(a)(1), SSA.

The presumption of continued eligibility is an expedient for the State to facilitate timely payments and may not be used as a substitute for the State completing its determination procedures. In order to avoid failing to comply with Section 303(a)(1), SSA, by paying benefits when they are not due, a State using the presumption must issue a determination as soon as administratively feasible after payment is made to verify whether the presumption was correct. In arriving at such a determination the State must follow the predetermination procedures set forth in UIPL No. 1145.

The Department is aware that making payments based on a presumption of continuing eligibility may result in overpayments. For that reason, States must make timely determinations whenever possible. A certain number of overpayments resulting from application of the presumption of continuing eligibility, when the agency has been unable to issue a timely determination, are inevitable.

In order to notify individuals of their rights and obligations, a State must inform claimants who receive payments under such a presumption that a pending eligibility issue may affect their entitlement and may result in an overpayment. The State may also advise claimants that they may want to defer cashing the unemployment check until their eligibility has been verified. This may help to deter losses to the State's fund and enable the claimant to immediately repay any overpayment. This procedure is consistent with Departmental guidance in UIPL No. 34-85, concerning the prohibition on voluntary waiver of benefit rights by claimants, because a determination has not yet been made.

8. **Action Required.** Administrators are to provide this information to appropriate staff.

9. **Inquiries.** Inquiries should be directed to the appropriate Regional Office.

10. **Attachment.** UIPL No. 1145.

---

1. This does not imply, however, that Section 303(a)(1), SSA, sets no outside time limit on individual determinations of initial claims.