# Exhibit K



**LEGAL AID JUSTICE CENTER**

*Pat Levy-Lavelle*
*Attorney*

Virginia Office of the Attorney General
Attn: Attorney General Mark R. Herring
Senior Assistant Attorney General Heather Hays Lockerman
202 North Ninth Street
Richmond, VA 23219

Virginia Employment Commission
Attn: Ellen Marie Hess, Commissioner
6606 West Broad Street
Richmond, VA 23230

*Sent via first-class mail and email to*
MHERRING@OAG.STATE.VA.US, HLOCKERMAN@OAG.STATE.VA.US, and
ELLENMARIE.HESS@VEC.VIRGINIA.GOV

November 6, 2020

**RE:  Violations of Statutory and Constitutional Rights –
Delays in VEC Deputy Adjudication and Cessation of Continued Claims**

Dear Attorney General Herring, Senior AAG Lockerman, and Commissioner Hess:

We—the Legal Aid Justice Center, in conjunction with other firms, including Legal Aid Works and the Virginia Poverty Law Center—represent multiple claimants amongst the thousands enmeshed in the crisis of backlogged unemployment insurance claims at the Virginia Employment Commission. We also represent a group of Virginians whose unemployment insurance payments the VEC cut off summarily—who now have been waiting months for a deputy to determine if their cessation of benefits was warranted. As you know, these processing delays and errors have left many thousands of Virginia families in uncertainty and financial ruin.

We are preparing a federal class-action complaint on behalf of our clients and the thousands of Virginians who are similarly situated. Given our history of collaboratively resolving legal disputes, we first ask to work with you to come to a solution without the need for litigation.

**The Issues**

*Waiting Applicants.* According to a recent article in the Virginia Mercury,[1] 90,000 Virginians have filed applications for benefits with the VEC and are stuck in a waiting status.

---

[1] Ned Oliver, "Virginia ranks worst in nation for quickly reviewing some unemployment claims," Virginia Mercury, Oct. 30, 2020, at https://www.virginiamercury.com/2020/10/30/virginia-ranks-worst-in-nation-for-quickly-reviewing-unemployment-claims/.

Letter re Delays in VEC Deputy Adjudication and Cessation of Continued Claims     11/6/2020
Page 2 of 5

Presumably, the VEC has determined that one or more issues related to their applications needs to be evaluated by a deputy before benefits can be paid (or otherwise be deemed not payable). As you may know, data from the U.S. Department of Labor (USDOL) indicates that Virginia ranks last among all states in the percentage (9.0%) of nonmonetary determinations issued within 21 days of the benefit application filing date.[2] By contrast, USDOL has established a performance measure that 80% of nonmonetary determinations should be made within 21 days of the date of detection of any nonmonetary issue that has the potential to affect the claimant's benefit rights.[3] In practice, many applicants are waiting months for their claims to be processed.

    *"Continued Claims" Claimants.*  Equally troubling is the termination of continued claims without process. In short, thousands more Virginians have received benefits for some number of weeks, and then have lost their benefits without notice or hearing. WTVR 6 News in Richmond reported last month that 60,000 Virginians fall into this category of claimants.[4] Typically, if these claimants can get any information at all about the cessation of their benefits from the VEC, they are told only that an issue related to their claims exists, which requires a deputy adjudication to be resolved, and that they cannot receive benefits in the meantime.

### Legal Violations and Practical Problems

    The VEC's actions—or inactions, as the case may be—violate various statutory and constitutional rights afforded to our clients. As to the "waiting applicants," Virginia Code Section 60.2-619(A)(1) provides that "a representative designated by the Commission as a deputy, shall *promptly* examine the claim." (emphasis added). Merriam-Webster's Dictionary defines the word "promptly" as "without delay: very quickly or immediately."[5] No reasonable interpretation of "promptly" would condone delays lasting several months in processing a claim, especially given that the Virginia Supreme Court declared that the Virginia Unemployment Compensation Act "should be liberally construed so that those justly entitled to compensation may not be denied, and the [remedial] purpose of the legislation thus effectuated."[6] Moreover, this statutory requirement has been deemed "mandatory" by the Virginia Court of Appeals,[7] such that the VEC lacks discretion to withhold from claimants prompt examination of claims. Consequently, claimants have an entitlement to prompt determination of their claims—a property interest protected by the Due Process Clause of the Fourteenth Amendment. By forcing claimants to wait months before their claims are examined by a deputy, the VEC has deprived these applicants of their property interest in having their claims promptly examined, in violation of the Due Process Clause.[8]

---

[2] This data is available at https://oui.doleta.gov/unemploy/ranking.asp. Virginia's percentage reported here is for the time period starting with the quarter beginning April 1, 2020.

[3] This performance standard is found at https://oui.doleta.gov/unemploy/pdf/Core_Measures.pdf.

[4] Melissa Hipolit, "Mom waits 16 weeks for unemployment benefits: 'It just feels like a losing war'," WTVR 6 Richmond, Sept. 29, 2020, at https://www.wtvr.com/news/problem-solvers/problem-solvers-investigations/mom-waits-16-weeks-for-unemployment-benefits-it-just-feels-like-a-losing-war.

[5] https://www.merriam-webster.com/dictionary/promptly

[6] *Ford Motor Co. v. Unemployment Comp. Comm'n*, 191 Va. 812, 823-24 (1951).

[7] *See Virginia Employment Comm'n v. Cole,* No. 1268-15-2, 2016 WL 1317584, at *4 (Va. Ct. App. Apr. 5, 2016).

[8] *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434-36 (1982).

Letter re Delays in VEC Deputy Adjudication and Cessation of Continued Claims   11/6/2020
Page 3 of 5

The individuals comprising the "continued claims" class of claimants have a statutory right to payment of benefits "when due." 42 U.S.C. § 503(a)(1). The U.S. Department of Labor has interpreted this provision "to require prompt adjudication of eligibility issues that arise during a continued claim series[,]" cases in which the claimant has applied, begun to receive benefits, and continues filing weekly claims. Unemployment Insurance Program Letter No. 04-01 ("UIPL 04-01"). When timely decisions—defined as decisions issued no later than the end of the week following the week in which the state agency detects a potentially disqualifying issue[9]—cannot be made, federal guidance prohibits the state agency from withholding benefits. This requirement creates a presumption of the claimant's ongoing eligibility for benefits, which may be overcome only after a deputy issues an adverse determination regarding the issue(s) in question:

> UIPL No. 1145 stated that before a determination is made in a continued claim series "benefits will not be withheld." ... Prior to the date for timely determinations, a State is not required to pay UC without a determination. However, when the date for a timely determination has passed in a continued claim series, the State must either issue a determination of ineligibility for UC (where the facts establish ineligibility) or else pay UC immediately. Payment would occur under a presumption of continuing eligibility.

> UIPL 04-01 at ¶7.

The U.S. Department of Labor has acknowledged that while the required presumption of continued eligibility may create overpayments in some cases, the presumption is necessary:

> The Department is aware that making payments based on a presumption of continuing eligibility may result in overpayments. For that reason, States must make timely determinations whenever possible. A certain number of overpayments resulting from application of the presumption of continuing eligibility, when the agency has been unable to issue a timely determination, are inevitable.

> *Id.*

Likewise, claimants have a property interest in unemployment insurance benefits, and those benefits in a continued claims posture cannot be terminated without first providing a claimant an "effective process for asserting his claim prior to any administrative action."[10] In other words, once a claimant begins to receive benefits, they cannot be deprived of their benefits unless or until an adverse deputy determination occurs. *Id.* Furthermore, because claimants have a property interest in unemployment benefits, the Due Process Clause of the Fourteenth Amendment entitles claimants to receive clear notice of their deputy fact-finding interview and their rights to participate in the interview.[11]

---

[9] UIPL 04-01 at ¶6.
[10] *Klimko v. VEC*, 216 Va. 750, 761 (1976).
[11] *Id.*

Over 100,000 Virginians comprise both putative classes. While their claims languish at the VEC, many face the risk of eviction, and many cannot pay for their families' basic needs. Thus, the legal deficiencies of the VEC's current protocols have caused and exacerbated real suffering and irreparable harm. We therefore hope you will choose to work with us to tackle these issues.

**Remedies**

As to the "continued claims" claimants, the solution is simple: apply the presumption federal guidance requires. Once a person has begun receiving benefits and an issue arises that may impact eligibility or qualification (e.g. job separation, subsequent job offers), the VEC must either 1) adjudicate no later than the end of the week following the week in which the issue is detected, or otherwise 2) continue benefits unless or until there is an adverse deputy determination (following adequate notice to and participation rights for the claimant). The U.S. Department of Labor requires the VEC to apply this presumption of ongoing eligibility irrespective of the possibility that doing so may result in overpayments for some claimants.

As to the waiting applicants, the VEC must work in whatever ways possible to reduce the adjudication backlog. Doing so may require the VEC to increase its adjudication capacity and/or decrease the number of cases needing adjudication using a triage system. The VEC also may need to consider additional ways to reduce hardship on unemployed Virginians.

We are aware that the VEC has posted job vacancies for additional hearing officers; however, that step alone has proven woefully insufficient to deliver needed results.

We have undertaken a review of steps other states have made to reduce adjudication backlogs. These include increasing temporary adjudication capacity through hiring private contractors; deploying National Guard members to claims processing functions; temporarily reassigning administrative adjudicators from other state agencies; temporarily reassigning other agency staff to adjudication functions; having adjudicators specialize in particular types of issues, to allow them to work through cases more efficiently; expediting training for new adjudicators by having them specialize in particular types of issues; setting up teams of experts to resolve the oldest and most complicated claims; and using computer systems to resolve certain types of cases *en masse*. To the extent additional funds are needed for any of these purposes, we suggest that unspent CARES Act funds be utilized.

In addition to working through adjudication backlogs, states have taken steps to respond to hardships caused by adjudication delays. For example, Oregon has created a "Benefits While You Wait" program that identifies people who are likely to be deemed qualified for benefits via either regular unemployment insurance or Pandemic Unemployment Assistance ("PUA"), and begins issuing benefit payments while their cases wait for adjudication.[12]

---

[12] *See* State of Oregon Employment Department, "Tens of Thousands of Oregonians Awaiting Adjudication Could Receive 'Benefits While You Wait'," July 31, 2020, at https://unemployment.oregon.gov/tens-of-thousands-of-oregonians-awaiting-adjudication-could-receive-benefits-while-you-wait.

Letter re Delays in VEC Deputy Adjudication and Cessation of Continued Claims     11/6/2020
Page 5 of 5

Virginia must do much more to respond to the crisis of backlogged unemployment claims. We are confident that the Commonwealth can.

Assuming that you are interested in discussing this issue with us, we ask that you indicate that interest to us, by email to pat@justice4all.org and steve@vplc.org, no later than Monday, November 23, and that we schedule a discussion (to occur by Zoom or similar video call service) with you to take place no later than December 4. We look forward to discussing these matters with you further.

Thank you in advance for your attention to this urgent and troubling situation.

Sincerely,

Pat Levy-Lavelle