UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| ASHLEY COX, *et al.*, )<br>)<br>)<br>PLAINTIFFS, )<br>)<br>v. )<br>)<br>ELLEN MARIE HESS, )<br>in her official capacity as Commissioner )<br>of the Virginia Employment Commission, )<br>)<br>DEFENDANT. )<br>) | Case No: 3:21cv253-HEH |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S REQUEST FOR DISMISSAL OF THE CASE**

Plaintiffs, by counsel, submit this reply to the filing by Defendant on August 10, 2021, which requests dismissal of this case. *See* ECF No. 39.

The VEC should be recognized for the progress it has made – under the watchful and critically important supervision of this Court – resolving most of the backlog of targeted cases that existed as of May 10.[1] But the request for dismissal is premature, because there are several discrete concerns that have yet to be resolved. It makes little sense to suggest that these concerns be addressed by a new court filing – such as an Amended Complaint, Fed. R. Civ. P. 24 or 25 motion or even a new case – and restart a litigation process. All of the material issues that need to be addressed should remain the subject of this Court's supervision and the conferral process already

---

[1] As the Court is aware, the adjudication requirements addressed so far relate only to delays caused by issues other than identity verification processes. As raised below, the VEC's identity verification processes have also caused many Virginians to be denied benefits to which they are entitled.

1

developed and in place between the Plaintiffs' advocates and the VEC. The Court is already aware of many of the remaining issues.

Accordingly, while this is a moment to appreciate the VEC's work thus far, it is equally a moment to note that several important matters remain unresolved, and that the Court's continued supervision is essential to their resolution. These matters include: 1.) the VEC's continued failure to resolve claims in a timely manner; 2.) the VEC's continued practice of cutting off benefits to those entitled to the presumption of continued eligibility; 3.) the growing backlog of first level appeals; 4.) continued problems with the VEC's Call Center; and 5.) continued problems with the VEC's identity verification processes. These issues are discussed below in greater detail. Therefore, Plaintiffs' Counsel requests that the Court direct the parties to continue the meet-and-confer process established in the May 25, 2021 Order for an additional 45 days in an effort to resolve these types of issues in the context of this case and under this Court's supervision, rather than through additional or expanded litigation.

**1. The VEC's Continued Failure to Resolve Claims in a Timely Manner.**

While the VEC has made tremendous progress adjudicating the backlog of claims that existed as of May 10, 2021 ("the May 10th backlog"), claim processing delays have continued and a new backlog of unadjudicated claims has been created. Evidence available to Plaintiffs' Counsel indicates that tens of thousands of additional cases have been added to the adjudication backlog since May 10, ECF No. 32 at 3-4, and further evidence shows that very, very few cases are resolved within the time limits established by the U.S. Department of Labor (DOL).

As the Complaint in this case describes, Virginians have a legal right to have their unemployment cases processed (and adjudicated by deputies, when necessary) in a "prompt," "timely" manner – which is defined by DOL to be within 21 days. ECF No. 01 at ¶¶ 23-27.

Plaintiffs' Counsel continue to see and receive reports regularly from claimants who applied for benefits long before May 10, and are still waiting for benefits. Perhaps those are among the residual 1,860 claimants identified by the VEC, or perhaps they are additional people who the VEC's recordkeeping has failed to identify amidst the surge in claims. In either case, there are many very old cases still to be resolved.

In addition, the May 10th backlog excludes two significant groups of claimants: (1) cases requiring deputy adjudication that have accumulated after May 10, and (2) people who were being paid status as of May 10, but who still hade issues with respect to their claims that had to be adjudicated by deputies. Pursuant to paragraph 4 of the May 25, 2021 Order, we have repeatedly asked the VEC for information on the size of those groups. Repeatedly, the VEC has declined to provide us those numbers.[2]

However, available data indicates that the VEC still has much work to do. In a report filed on July 1, 2021, Plaintiffs' Counsel estimated, using public data, that approximately 30,000 new cases had been added to the backlog of claims awaiting adjudication since May 10. ECF No. 32 at 4. That number has probably increased substantially since July 1. DOL reports show that for the month of July – the month that the VEC reported a significant increase in adjudications – it still processed only 4.3% of separation cases and 6.5% of nonseparation cases within 21 days. https://oui.doleta.gov/unemploy/btq.asp (last accessed Aug. 12, 2021).[3] While that represents an improvement from the February 2021 numbers quoted in the Complaint (1.7% for separation cases,

---

[2] We have recently filed a Freedom of Information Act (FOIA) request with the VEC seeking that information.

[3] From this site, a user can generate reports for any state and any recent time period, up through July 2021. The percentages in the text were obtained by retrieving reports for Nonmonetary Determination Time Lapse, Detection Date, Separations; and Nonmonetary Determination Time Lapse, Detection Date, Nonseparations.

and 3.3% for nonseparation issues, ECF No. 01 ¶ 34), it certainly does not indicate final success. *See* ECF No. 1, at ¶ 33 (describing DOL performance standards). To its credit, the VEC apparently agrees that much more work remains, because it reports in its August 10 filing that it is still seeking to hire more deputies, on top of the contract deputies it recently hired. ECF No. 39 at 4.

### 2. The VEC's Continued Practice of Cutting off Benefits to Claimants Entitled to a Presumption of Continued Eligibility.

The other primary focus of this case concerns Virginians who had started getting benefits only to see those benefits summarily cut off without due process – the "continued claims" group. Available evidence indicates that the VEC is still cutting off benefits without due process to thousands of Virginians – notwithstanding long-established precedent, this Court's Order, and recent direction from DOL. ECF No. 38 at 3-8.

As Plaintiffs have described in other filings,[4] once a claimant has started getting benefits, federal and state law dictate that those benefits cannot be cut off for more than 14 days, due to an issue of potential ineligibility, unless a deputy decides that a claimant is no longer eligible for benefits. Moreover, the Court's May 25 Order requires the VEC to "address and resolve difficulties" among claimants whose benefits remained summarily cut off without due process, and that the VEC "shall pay them by June 15, 2021." ECF No. 25 at ¶¶ 11-12. The required presumption of continued eligibility ensures the financial stability of families that have lost their livelihoods – and, thus, continued payment of benefits is not only a legal right but a practical necessity.

Despite the legal standards, and despite the language of the Court's Order, the VEC refused, until very recently, to apply the presumption of continued eligibility to two large groups

---

[4] See, *inter alia*, Complaint; Plaintiff's (July 1) Status Report; Plaintiffs' Status Report Regarding VEC's Proposed Call Center Changes and VEC's Handling of 'Continued Claims,' ECF Nos. 1, 32, and 38.

4

of claimants – those who had allegedly failed to document proof of identity, and those who allegedly failed to document proof of earnings. The VEC troublingly had asserted that these Virginians were not due continued benefits, until – after repeated prompting by Plaintiffs' Counsel – the VEC asked DOL, and was told in blunt language that the agency had to follow the law and resume paying benefits to these claimants. The VEC has since done so, and it is likely that thousands of Virginians are now receiving benefits as a result. *See* ECF No. 38 at 3-8.

Still, a January 2021 FOIA request revealed that VEC was declining to apply the presumption of continued eligibility to several additional categories of claims. Unfortunately, Plaintiffs' Counsel have no indication, thus far, that the VEC has changed its practice as to these claimants. Particularly in view of the recent continued claims directive issued by DOL, it is essential (for both legal compliance and human dignity) that the agency apply the presumption of continued eligibility across the board to Virginians who have had their benefits summarily cut off, without due process, in excess of 14 days. Plaintiffs' Counsel recently sent a FOIA request to the VEC to ascertain which categories of claims, and how many Virginians, are still subject to extended benefit cutoffs in the absence of due process.

### 3. The Growing Backlog of First Level Appeals.

There is already an unacceptable backlog of first level appeals, and the VEC's laudable increase in deputy adjudications will necessarily create even more cases to be reviewed by this overburdened appellate process.

At the first appeals level in the VEC's system, the average case age (from appeal filing to decision) has continued to grow longer and longer throughout the pandemic, and currently stands at 274.6 days. Average Age of Pending Lower Authority Appeals, State Ranking of Core Measures for the Period: 04/01/2021 to 06/30/2021, Employment and Training Administration, U.S.

Department of Labor, available at https://oui.doleta.gov/unemploy/ranking.asp (last accessed Aug. 11, 2021). In this regard, Virginia is third from last in the country, with a delay that is more than twice the national average of 126.0 days. *Id.* Without prompt action, this situation will only get worse.

    4.  **Continued Call Center Problems.**

While hiring more call center agents is a step in the right direction, many more steps are needed before Virginians receive adequate service from that system. As Plaintiffs noted in a recent filing, ECF No. 38 at 2-3, the VEC has begun a process that could lead to improved customer service at its call centers by hiring additional agents. But hiring is only the first step.

As noted in our previous filing, Plaintiffs' Counsel have observed two types of complaints with the VEC's call center: first, calls are not answered; and second, when calls are answered, often the agent cannot do anything to resolve claimants' problems or provide the information that the claimants seek. *Id.* Simply hiring more agents can help with the first problem, but not with the second – at least not right away. The VEC concedes that call center agents normally receive "several months" of training, ECF No. 34 at 1, so until those new agents receive training and gain experience, the process is not complete – and Virginians will not be receiving the support that they deserve.

    5.  **Continued Problems with the VEC's Identity Verification Processes.**

The VEC continues to use identity verification processes that do not work for some claimants. Plaintiffs' Counsel have received a significant number of complaints about the contract vendor that the VEC uses to verify claimants' identity – in most cases from individuals who are unable to navigate the system. VEC officials appear to recognize that the system is not working in some cases, and they have advised that they are looking for alternative systems. But Plaintiffs'

Counsel have no indication that the process of bringing in new systems has progressed very far, and the failures of the current system continue to cause many Virginians to be denied benefits to which they are entitled.

## **Conclusion**

The VEC's progress in adjudicating the pre-May 10 backlog of cases is to be commended. There are good people at the agency, and Plaintiffs' Counsel is aware of that. Still, many Virginians are without answers and without benefits, and several essential issues raised in this case remain unresolved. Accordingly, the VEC's request – that the Court give up its oversight role, in helping the agency and Virginians work collaboratively out of the pandemic-era unemployment crisis – is premature. At this point, the Court should not cede its continuing jurisdiction to encourage and oversee continued collaboration on the issues raised in this litigation and related ones affecting unemployed Virginians. This forum provides a way for the VEC to avoid additional or expanded litigation, and for Plaintiffs to seek relief on issues that matter to claimants.

Therefore, Plaintiffs' Counsel request that the Court order a 45-day meet-and-confer period (through approximately the end of September 2021) to allow the parties to discuss remaining issues and try to resolve them collaboratively. If needed, the Court could, again, mediate such further relief as may be necessary, to recognize both the agency's continuing efforts and the unresolved rights of Virginia families to needed unemployment benefits which ensure their financial security as the Commonwealth digs out of the pandemic and its associated economic crisis.

August 12, 2021                    Respectfully submitted,

ASHLEY COX, EMILY DIMOND, PENNY WILLIAMS, AMBER DIMMERLING, AND LENITA GIBSON, on behalf of themselves and all others similarly situated

By:      /s/ Granville C. Warner
Brenda Castaneda, VSB # 72809
Patrick Levy-Lavelle, VSB # 71190
Granville Warner, VSB # 24957
**LEGAL AID JUSTICE CENTER**
1000 Preston Avenue
Charlottesville, Virginia 22903
Telephone: (434) 977-0553
Email: brenda@justice4all.org
Email: pat@justice4all.org
Email: cwarner@justice4all.org

Craig C. Marchiando, VSB # 89736
Leonard A. Bennett, VSB # 37523
Amy Austin, VSB # 46579
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: amyaustin@clalegal.com

Steven Fischbach, VSB # 94280
**VIRGINIA POVERTY LAW CENTER**
919 East Main Street, Suite 610
Richmond, VA 23219
Telephone: (804) 351-5266
Email: steve@vplc.org

Daniel Turczan, VSB # 81551
**LEGAL AID WORKS**
500 Lafayette Blvd., Suite 100
Fredericksburg, Virginia 22401
Telephone: (540) 371-1105
Email: dturczan@legalaidworks.org

                Kristi Cahoon Kelly, VSB #72791
                Andrew J. Guzzo, VSB #82170
                Casey S. Nash, VSB #84261
                **KELLY GUZZO, PLC**
                3925 Chain Bridge, Suite 202
                Fairfax, VA 22030
                Telephone: (703) 424-7572
                Facsimile: (703) 591-0167
                Email: kkelly@kellyguzzo.com
                Email: aguzzo@kellyguzzo.com
                Email: casey@kellyguzzo.com

                *Counsel for Plaintiffs Ashley Cox, et al.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of August, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> William W. Tunner (VSB #38358)
> William D. Prince IV (VSB #77209)
> Michael G. Matheson (VSB #82391)
> John P. O'Herron (VSB #79357)
> Rachel W. Adams (VSB #92605)
> THOMPSON MCMULLAN, P.C.
> 100 Shockoe Slip, 3rd Floor
> Richmond, Virginia 23219
> Tel: (804) 649-7545
> Fax: (804) 780-1813
> wtunner@t-mlaw.com
> wprince@t-mlaw.com
> mmatheson@t-mlaw.com
> joherron@t-mlaw.com
> radams@t-mlaw.com

By: /s/ Granville C. Warner
Granville C. Warner, VSB # 24957
**LEGAL AID JUSTICE CENTER**
1000 Preston Avenue
Charlottesville, Virginia 22903
Telephone: (434) 977-0553
Email: cwarner@justice4all.org

*Counsel for Plaintiffs Ashley Cox, et al.*